449 So.2d 41 (1984)
STATE of Louisiana
v.
Jerry Dean GUIDRY.
No. 83 KA 0860.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Rehearing Denied April 3, 1984.
*42 Margaret A. Coon, Asst. Dist. Atty., Covington, for appellee.
Oliver F. Johnson, S. Austin McElroy, Covington, for appellant.
Before PONDER, WATKINS and CARTER, JJ.
CARTER, Judge.
This criminal appeal arises from the conviction of Jerry Dean Guidry for second degree murder, LSA-R.S. 14:30.1, of his five-week old infant son, Jerry Dean Guidry, Jr. Defendant received the mandatory sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant appeals his conviction and sentence specifying four assignments of error.

FACTS
At approximately 8:00 a.m. on January 31, 1982, the defendant, Jerry Guidry, took his wife to work at one of the two jobs she held. He returned home and was alone with their five-week old baby, Jerry Dean Guidry, Jr. Sometime after 11:00 a.m., the baby awoke and started crying. Defendant picked up the baby and tried to feed him. Apparently, the baby would not take nourishment and would not stop crying. The defendant subsequently inflicted a severe and brutal beating on the five-week old child which ultimately resulted in the child's death.
Sometime after the beating and before noon, Jerry Guidry took the baby in the family vehicle and picked up his wife at her job. The couple then took the baby to a Slidell hospital. There it was determined that the baby was in critical condition and should be taken to Charity Hospital in New Orleans. The baby died on February 3, 1982, at Charity Hospital. The examining pathologist testified that there were massive head injuries, the femur of the left leg was broken, and the child suffered other internal injuries. The cause of death was injury to the brain.
Defendant initially said that the baby received these injuries as the result of a fall from the couch. However, the medical evidence indicated that it was unlikely, if not impossible, for the injuries suffered by the child to have resulted from a simple fall and that the injuries must have been inflicted through intentional acts. Defendant thereafter confessed to beating the child.

TRIAL COURT
Jerry Guidry was indicted for second degree murder for the killing of Jerry Dean Guidry, Jr. He entered a plea of not guilty and not guilty by reason of insanity. Following a trial by jury, Guidry was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. This criminal appeal followed.

ASSIGNMENTS OF ERROR
Defendant-appellant, Jerry Guidry, relates the following assignments of error:
(1) The trial court erred when it denied defendant's motion to suppress the confessions;
(2) The trial court erred when it refused to appoint a sanity commission and commenced with jury selection;
(3) The trial court erred in accepting a psychiatrist as an expert when said psychiatrist was not qualified in forensic psychiatry; and,
(4) For errors patent on the face of the record, the conviction should be reversed.

*43 ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant contends that the trial court erred when it denied his motion to suppress the confessions. Defendant alleges that the confessions were made as the result of a beating defendant received at the hands of two police officers and the influence of a social worker who coerced defendant into confessing.
Defendant's admission of guilt was made when defendant, initially booked for aggravated battery, was being re-booked with second degree murder upon the death of the infant. The officers testified that defendant became very violent and began screaming and striking out at the officers. Defendant broke away from the officers and ran out into a hallway, where he was subdued by other policemen and trustees, who wrestled him to the ground. During the incident, defendant screamed out "I couldn't control my temper. I didn't mean to hurt the baby. I can't control my temper." The next day, John Fortenberry, a representative of the Department of Health and Human Services, went to speak to defendant about making funeral arrangements for burial of the child. At the time, defendant was extremely upset and told Fortenberry that he had inflicted the injuries on the child in a fit of rage. Fortenberry suggested to defendant that he might feel better if he could "get it off his chest" and suggested that defendant talk to someone about it. Defendant agreed to give a statement to the police officers, which was tape recorded and admitted into evidence at the trial.
Before a confession can be introduced into evidence, it must be affirmatively shown that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. The state bears the burden of proving the voluntariness of the confession beyond a reasonable doubt. State v. David, 425 So.2d 1241 (La.1983). When the defendant alleges actual police misconduct to obtain the confession, the State must rebut the allegations specifically. State v. Neslo, 433 So.2d 73 (La.1983). In reviewing the trial judge's ruling as to the admissibility of a confession, his conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Loyd, 425 So.2d 710 (La.1982).
Defendant's allegation that one of the confessions was obtained as a result of a beating by police officers was specifically rebutted by the officers who originally booked defendant and the two female officers who actually obtained the statement. We find the record amply supports the determination of voluntariness by the trial court.
Defendant also contends that Fortenberry, as an agent of the State, exerted improper influence on defendant in order to coerce a confession. The trial court found that Fortenberry was acting out of compassion and did not attempt to coerce defendant. We agree. The circumstances under which the statement were given do not suggest that defendant's will was overpowered psychologically or otherwise. The taped confession illustrates the defendant's apparent contrition and desire to relieve himself of the burden of his actions. At the time defendant gave the statement, he specifically denied any coercion or other inducements. We find the record supports the finding by the trial court that defendant made the statements voluntarily.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant alleges that the trial court erred when it refused to appoint a third sanity commission and commenced with jury selection after a letter was submitted to the court in which Dr. Kenneth Ritter, Forensic Psychiatrist, stated that in his opinion the defendant was not competent to stand trial.
The first sanity hearing was held on May 4, 1982, and at that time the expert witnesses found the defendant incapable of assisting his attorney because he presented *44 a danger to himself and to others. As a result of this hearing, the defendant was sent to the Feliciana Forensic Facility.
A second sanity hearing was held on October 6, 1982, and it was determined that the defendant knew right from wrong, that he understood the nature of the charges against him and that he was able to assist counsel in his defense. Trial was set for April 12, 1983. On the day before the trial, the defendant filed a motion for the appointment of another sanity commission. This motion alleged that the defendant had obtained the services of Dr. Kenneth Ritter to assist in his defense and that Dr. Ritter had examined the defendant on April 10th and found him incompetent to stand trial. The court then ordered Dr. William A. Bloom, who was a member of the original sanity commission, to examine the defendant.
On the day of the trial, after the jury had been selected and retired from the courtroom, the court held a hearing as to the mental competence of the defendant. Dr. Ritter testified that the defendant was unable to stand trial because of his depression. Dr. Bloom testified that the defendant was competent, understood the nature of the charges against him, was capable of assisting his counsel in his defense, and knew the difference between right and wrong. At the conclusion of the hearing, the court found the defendant competent and proceeded with the jury trial.
The defendant argues that under the provision of LSA-C.Cr.P. art. 642, once the defendant's capacity to proceed is raised, no further proceedings can be maintained and that, under LSA-C.Cr.P. art. 643, the court must order a mental examination when it has reasonable cause to doubt defendant's capacity to proceed. Defendant contends that the trial court erred when it proceeded with jury selection after the court was presented with the letter from Dr. Kenneth Ritter and that the hearing as to mental competence the next day did not cure this defect. We disagree.
The appointment of a lunacy commission is not a perfunctory matter or a ministerial duty of the trial court, nor is it guaranteed to every accused in every case. State v. Nix, 327 So.2d 301 (La. 1975), cert. denied 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198. The fact that the defendant's capacity to proceed is called into question does not, for that reason alone, require the trial judge to order a mental examination of the defendant; rather, he must have reasonable grounds to doubt defendant's capacity. LSA-C.Cr.P. art. 643. The ordering of a sanity commission to inquire into the defendant's present capacity to proceed rests in the sound discretion of the trial court. State v. Wilkerson, 403 So.2d 652 (La.1981).
The trial judge noted in the instant case that he had observed the defendant during the jury selection process and that the defendant was actively assisting his counsel in his defense and appeared more than capable. This, together with the testimony of Dr. Bloom, clearly established the defendant's competence. Although Dr. Ritter testified in opposition to Dr. Bloom, the presence of conflicting testimony does not persuade us that the court's determination was erroneous. We find no abuse of discretion.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
This assignment was not briefed on appeal. Under Rule 2-12.4 of the Uniform Rules of the Court of Appeal, we consider this assignment as abandoned.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that because of errors patent on the face of the record, his conviction should be reversed. Defendant does not allege a specific patent error, but merely requests the court to review the record and determine if such errors were made. We have reviewed the proceedings, and no patent errors were discovered.
This assignment of error is without merit.

*45 DECREE
Therefore, for the above and foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.