COLE, Judge.
The issue set forth on appeal is whether the evidence presented is sufficient to support the jury verdict of guilty of second degree murder.
Defendant, Willie Brunner, was indicted by the Tangipahoa Parish grand jury on a charge of second degree murder, a violation of La.R.S. 14:30.1. He pled not guilty. The jury unanimously convicted him as charged. The trial court sentenced defendant to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence and consecutive to the life imprisonment an additional two years at hard labor.[1] Defendant appeals his conviction urging one assignment of error, insufficiency of the evidence.
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal pursuant to La.Code Crim.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not indicate the defendant made such a motion. A reviewing court, in spite of defendant’s failure to proceed properly, must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed 560 (1977), now codified in art. 821. State v. Bell, 442 So.2d 715 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1244 (La.1984). The standard set forth in art. 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Walker, 447 So.2d 54 (La.App. 1st Cir.1984).
The elements of second degree murder pertinent to this case are set forth as the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1(1). However,
“A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed_” La.R.S. 14:31(1).
In addition, the state must also prove beyond a reasonable doubt a homicide was not committed in self defense. State v. Lynch, 436 So.2d 567 (La.1983).
*550 Where the circumstances indicate an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime. La.R.S. 14:15(2). Although the state must prove, beyond a reasonable doubt, the essential elements of the crime with which the defendant is charged, intoxication is in the nature of an affirmative defense to a criminal charge and the burden is upon the defendant to prove the existence of that condition at the time of the offense. State v. Davis, 451 So.2d 1 (La.App. 1st Cir.1984).
Several witnesses testified they were inside Bate’s Bar located in Hammond, Louisiana, on April 28, 1983, and viewed the defendant shoot the victim, Calvin Andrews.[2] The coroner, Dr. Ralph Maxwell, testified the victim died as a result of this shooting.
Mr. Abe Holmes, one of the eyewitnesses, stated the victim and the defendant “were standing up talking like normal people.” He did not observe any argument or threatening actions on the part of the victim, nor did he see any one make threats or direct any actions toward the defendant. Mr. Holmes was able to see the victim’s hands and did not see a weapon. Nor did he see a weapon when he went over to where the victim had fallen. However, he did notice the defendant had been drinking.
Mr. Willie Eugene Brown was another of the eyewitnesses to the shooting. Just pri- or to the incident Mr. Brown had borrowed $20 from the defendant. He testified he heard a shot, then another shot and viewed the victim fall at the end of the bar. The defendant and the victim were an arm’s length apart when the second shot sounded. Mr. Brown immediately walked over to the area where the victim lay sprawled. He heard defendant lean over and ask the victim if he wanted to die. The victim responded negatively. Mr. Brown then asked the defendant to holster his weapon. The defendant complied stating, “Gene, you know, I don’t carry this [pistol] just to be toting it.” Mr. Brown stated he did not see the victim with a weapon or any weapon in the area where the victim had fallen. He did not witness an argument between the pair. Upon being asked whether or not the defendant appeared excited or agitated following the shooting, Mr. Brown responded: “He was cool. He didn’t seem like he was too excited.”
Mr. Morris Bates, the owner-operator of Bate’s Bar, also viewed the defendant in the act of shooting the victim. Mr. Bates stated the defendant was not drinking, only dancing, but the defendant did buy Big Daddy (Mr. Brown) a drink. Mr. Bates fled his bar after the shooting to the neighboring Knighten’s Bar in order to call the police. Most of the patrons did likewise. The defendant followed shortly behind the crowd into the neighboring bar, discharging his firearm an additional time outside the bar. Mr. Bates heard the defendant inquire if anyone in this bar wanted some of this (his gun). At this moment the police entered the bar and the defendant dropped his gun upon a pool table.
The arresting officers, Lieutenant Steve Raacky and Officer Fred Calíais, both testified the defendant appeared intoxicated at this time. However, no blood test was administered upon arrest. Lt. Raacky advised the defendant of his constitutional rights at the time of booking. The defendant appeared to possess an understanding of his rights.
After viewing the evidence in the light most favorable to the prosecution, we find any rational trier of fact could have found beyond a reasonable doubt the essential elements for the crime of second degree murder. The evidence overwhelmingly *551 supports the jury’s verdict of guilty of second degree murder instead of not guilty based upon self-defense or guilty of the lesser offense of manslaughter. It has been shown the shooting of the victim was an unprovoked attack upon an unarmed man who neither argued with, threatened, nor took any direct action toward defendant. It was further shown the defendant was talking as a normal person, cool and not too excited after the shooting and had leaned over the victim to ask him if he wanted to die. Under these circumstances any claim of self-defense or sudden passion is meritless. State v. Grisby, 450 So.2d 1065 (La.App. 1st Cir.1984).
Consideration must now be turned to defendant’s claim of intoxication. Voluntary intoxication does not excuse the defendant of the crime, but it can be a defense to a crime which requires specific intent or special knowledge if the intoxication precluded the capacity to form that intent. State v. Burge, 362 So.2d 1371 (La.1978); State v. Myles, 439 So.2d 650 (La.App. 1st Cir.1983).
La.R.S. 14:10(1) provides:
“Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.”
Specific intent is a legal conclusion to be resolved ultimately by the trier of fact. Specific intent need not be proven as a fact, but may be inferred from the circumstances of a transaction and the defendant’s action. State v. Graham, 420 So.2d 1126 (La.1982). Therefore, whether voluntary intoxication in a particular case is sufficient to preclude specific intent is a question to be resolved by the trier of fact.
In this instance the jury found the level of intoxication was insufficient to preclude the defendant’s specific intent. Applying the La.Code Crim.P. art. 821 standard, we agree this is a valid finding. It has been demonstrated the defendant was capable of rational speech and thought processes. The defendant understood the consequences of his action. He leaned over the prone body of the victim and asked him whether he wanted to die. The defendant’s remark pertaining to toting his pistol further shows he realized the consequences of his conduct. The level of defendant’s intoxication was not great enough to prevent him from following the crowd into Knight-en’s Bar and holding them in abeyance until the police arrived. The police officers stated although the defendant appeared intoxicated he understood his rights when they were explained to him. Accordingly, defendant’s assignment of error is merit-less. The sentence and conviction are affirmed.
SENTENCE AND CONVICTION AFFIRMED.

. The record does not include a sentencing transcript, but a minute entry dated December 10, 1984 shows the additional two year sentence at hard labor was imposed under "Article 895” [La.Code Crim.P. art. 895]. This reference should apparently be to La.R.S. 14:95.2.

. The victim’s companion, Michael Hutton, also testified at trial. Mr. Hutton was on crutches at the time of this incident claiming he had been shot by the defendant a week prior to the incident. The testimony of Mr. Hutton is unfavorable to the defendant. However, he has seemingly been impeached for both bias and a prior inconsistent statement. Even without the testimony of Mr. Hutton the evidence is sufficient to support the conviction for second degree murder.