574 So.2d 417 (1991)
STATE of Louisiana, Appellee,
v.
Johnny Ray LOTT, Appellant.
No. 22073-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
Rehearing Denied February 21, 1991.
*419 Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., John C. Blake, Dist. Atty., John Michael Ruddick, Asst. Dist. Atty., Haynesville, for appellee.
Before MARVIN and FRED W. JONES, Jr., JJ., and PRICE, J. Pro Tem.
FRED W. JONES, Jr., Judge.
Defendant Lott was convicted by jury, as charged, of attempted second degree murder, La.R.S. 14:30.1 and 14:27, and sentenced to the maximum term of 50 years at hard labor. He appealed, reserving 10 assignments of error. We find no error insofar as defendant's conviction is concerned and, accordingly, affirm the conviction. However, because we find the trial court improperly denied defendant's motion for appointment of a sanity commission prior to sentencing, our affirmance of the sentence is conditional upon an adjudication of competency following an evidentiary hearing on the issue in the trial court.
Factual Context
Defendant stabbed his girlfriend, Ms. Champ, approximately nine or ten times while she sat in front of her residence in a friend's parked car. While the motivation for the attack is not entirely clear, apparently defendant thought Ms. Champ had lied to him. It also appeared that Ms. Champ had no idea defendant was about to attack her before he began to stab her with a knife. The stab wounds were potentially life-threatening, and Ms. Champ later was hospitalized for several days as a result of the attack. At the time she went to the hospital she was in shock, exhibiting low blood pressure and rapid heart rate.
Assignment of Error No. 1
In defendant's first assignment of error, he alleges the trial court erred in excusing juror Dorothy J. Davis. When Ms. Davis was questioned by the District Attorney on voir dire she consistently and emphatically maintained that due to her personal beliefs she did not believe she was capable of judging another person. When asked whether she could render a decision if charged with that responsibility by being selected to sit on the jury, Ms. Davis answered, "I don't think so". Following the District Attorney's examination, defense counsel was permitted to attempt to rehabilitate Ms. Davis and although Ms. Davis held fast to her personal beliefs, she ultimately stated she could set her opinions aside and vote with the evidence. Still not entirely satisfied, the court questioned Ms. Davis further, whereupon the following exchange occurred:
"The Court: If the state satisfies you beyond a reasonable doubt, if the state does what is required of the law to prove the defendant guilty and you are convinced that the state has carried its burden of proving him guilty, how would you vote?
Prospective Juror Davis: Be fair and vote according to the way I feel, but I still wouldn't want to vote.
The Court: You have to answer me one way or the other. You would either vote guilty, vote not guilty or just say I wouldn't vote, you know.
Prospective Juror Davis: If he's guilty, I'll vote guilty. If he's not guilty, I'll vote not guilty. If that's the way I feel about it in my mind.
The Court: My question was if the state carries the burden of convincing you beyond a reasonable doubt that he is guilty, how would you vote?
Prospective Juror Davis: Guilty, I guess.
The Court: Well, `I guess' won't do, ma'am. Court will grant a challenge for cause on Ms. Davis.
Mr. Culpepper: We would ask the record reflect our opposition to the Court's ruling.
The Court: The record will reflect the opposition, and the record will also reflect that on the response from the state on the election was a challenge for cause because her answer indicated she wouldn't be able to reach a verdict and the Court is satisfied because of this lady's indecisiveness and, really, change of responses that no one can be confident *420 that she would vote guilty or not guilty depending irrespective of the evidence."
Defendant argues the court erred in taking Ms. Davis's comment, "I guess" to mean that she could not make up her mind.
A trial judge is accorded great discretion in determining whether to seat or reject a juror for cause and its ruling thereon will not be disturbed unless review of voir dire as a whole indicates an abuse of that discretion. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992, rehearing denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986); State v. Mitchell, 475 So.2d 61 (La.App. 2d Cir.1985). Reading the voir dire testimony of Ms. Davis as a whole, the court did not abuse its discretion in rejecting her as a juror. While defense counsel effectively rehabilitated Ms. Davis initially, she still appeared to show signs of uncertainty by never clearly stating she would vote guilty if the defendant was guilty. Instead, she always qualified her statements in some manner.
The record does not clearly indicate whether the prospective juror was disqualified pursuant to a state-raised challenge for cause, La.C.Cr.P. Art. 797 and 798, or because of the court's doubt regarding her competency to serve, La.C.Cr.P. Art. 787; however, the distinction is inconsequential. If the basis for the juror's dismissal was the state's objection and if the ruling was erroneous, under La.C.Cr.P. Art. 800 B such an error would not afford defendant a ground for complaint unless the ruling effectively permitted the state to exercise more peremptory challenges than that to which it was legally entitled. Because defendant's offense was necessarily punishable by imprisonment at hard labor, the state was entitled to 12 peremptory challenges. The court's minutes indicate the state exercised only six of its peremptory challenges and that two jurors were "excused for cause." Thus, even if both of the prospective jurors "excused for cause" are included with those excused as a result of the state's exercise of peremptory challenges, the state would still have exercised only eight peremptory challenges out of the twelve available. The same logically holds true even if the court, on its own initiative, determined Ms. Davis should be "excused for cause". Consequently, defendant has no ground for complaint and the assignment is without merit.
Assignment of Error No. 2
Defendant's second assignment of error alleges the trial court erred in sustaining an objection raised by the state during the cross-examination of Dorothy Champ. Defense counsel essentially complains that he was trying at the time of objection to establish that the witness had previously made a statement inconsistent with her present testimony, but was not allowed to do so.
The record shows the state's objection was restricted to the form of the question, with the state arguing that the defense attorney's quote of the prior statement of the witness was inaccurate. The court sustained the objection, although it allowed defense counsel the opportunity to listen to the tape of defendant's testimony to insure the quote's accuracy, as well as the opportunity to rephrase his question. The court's ruling did not prevent defense counsel from attempting to establish the alleged prior inconsistent statement. That defense counsel elected not to take advantage of the opportunity offered him by the court cannot now be complained of. There is no merit to this assignment.
Assignment of Error No. 3
By this assignment, defendant complains the trial court erred in failing to allow the victim, Ms. Champ, to answer a question asking whether she brought any charges against the defendant. The trial court sustained the state's objection that the question was irrelevant. On direct examination, Ms. Champ had, at one point, stated, "and when he (defendant) came out, that's when itaccident happened." Defendant argues that through his question he "was simply trying to show the witness' credibility that if she felt that she was so seriously injured, and if she felt strongly enough that the defendant had indeed attempted to murder *421 her, whether she was the one to press charges."
The trial court is granted a great deal of discretion in assessing the probative value of evidence. Arledge v. Bell, 463 So.2d 856 (La.App. 2d Cir.1985). Ms. Champ's testimony unequivocally shows that defendant's attack upon her was not an "accident." Furthermore, the logical connexity between the method of institution of prosecution and Ms. Champ's opinion regarding the severity of her injuries, or her opinion regarding defendant's mental state, is extremely tenuous. The testimony which defendant contends he sought would have had little, if any, relevance to the issue of guilt or the issue of the victim's credibility. Consequently, defendant has failed to show that the trial court abused its discretion in sustaining the state's objection on the ground of relevancy. This assignment is meritless.
Assignment of Error No. 4
Defendant asserts the trial court erred in failing to instruct the jury that the state bore the burden of proving that the defense of intoxication was inapplicable to him. Defendant further argues that, if this court rules the burden did not belong to the state, since testimony was presented at trial concerning defendant's drinking and intoxication without objection from the state, this Court, on review, may consider that evidence. State v. Maxey, 527 So.2d 551 (La.App. 3d Cir.1988), writ denied, 541 So.2d 868 (La. 1989).
The provisions of La.R.S. 15:271 state that the plea of not guilty throws upon the state the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute the defendant's guilt. The state obviously does not have the burden of proving the existence of a negative by attempting to prove that all possible defenses are nonexistent. For example, the provisions of La.C.Cr.P. Art. 652 state the defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence.
More to the point, this Court has held in State v. Gipson, 427 So.2d 1293 (La.App. 2d Cir.1983), that intoxication is in the nature of an affirmative defense to a criminal charge, and the burden is upon the defendant to prove the existence of that condition at the time of the offense. See also State v. Freeman, 517 So.2d 390 (La. App. 5th Cir. 1987); State v. Brunner, 476 So.2d 548 (La.App. 1st Cir.1985); State v. Rivers, 444 So.2d 1384 (La.App. 3d Cir. 1984).
The trial court's failure to instruct the jury that the state bore the burden of proving that the defense of intoxication was inapplicable to defendant was correct. The trial court properly instructed the jury with regard to specific intent and with regard to intoxication as a defense in relation to specific intent. The instructions closely parallel the provisions of La.R.S. 14:15(2) which state that where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, the fact constitutes a defense to the prosecution of that crime.
In light of this proper instruction and the verdict returned, the jury must necessarily have found defendant's level of intoxication insufficient to preclude formation of the requisite specific intent. State v. Burge, 362 So.2d 1371 (La.1978). We agree this is a valid finding. The victim, Ms. Champ testified that she and defendant began drinking at about 7:00 p.m. and that over the next two hours they consumed a half pint of gin. The attack did not occur until approximately 1:00 a.m. There was no expert testimony presented concerning the effects of consuming that amount of alcohol over this period of time. In fact, defendant presented no evidence whatsoever to establish his level of intoxication. The evidence as a whole does not indicate defendant was so intoxicated that it would have been impossible for him to form the requisite specific intent to kill or inflict great bodily harm when he stabbed the victim repeatedly with a knife. See State v. Maxey, supra; State v. Johnston, 476 *422 So.2d 551 (La.App. 1st Cir.1985). For these reasons, defendant's assignment of error is meritless.
Assignments of Error 6, 7, 8 and 10
Defendant's new trial motion was made on the basis of information provided by Robert Levingston who testified at the motion for new trial. Levingston was defendant's cellmate, and had been called as a prospective juror in defendant's case prior to Levingston's being incarcerated. Levingston testified that while he and an acquaintance, Cleotis Hatter, were seated in the back row of the courtroom, prior to jury selection, Hatter stated he had heard that defendant had disguised himself as a woman and had gone to the hospital to try to kill "the girl (Dorothy Champ) that he was being tried for". Levingston stated he thought "a few more others might of knowed about it, too, cause they was talking about it, too." When defendant's counsel attempted to call jurors to question them with regard to whether they had overheard such conversations, the court sustained an objection to an insufficient foundation having been laid to call the jurors. The court stated:
"Mr. Culpepper, all of these prospective jurors were specifically asked if they had any knowledge, if they'd heard anything, et cetera, and you and the state both were present and heard those responses. Before you canI don't believe you can just call them up and review after a jury decision, review whether or not they told you the truth without some reasonable basis for questioning the integrity of the jurors. And at this point, the testimony of this man who is in prison and who indicated when he came to court that he couldn't read and write and, therefore, he didn't want to serve and who subsequently to that met this defendant and was put in the same cell with him and now comes up with a story of this nature, even if true, he points out to the courtroom as the far back of the courtroom that he would've had this heard this discussion. I just don't think that's foundation enough to go into these questions. If you don't have anything else, that's the way I'm going to rule."
Defendant specifies four errors in regard to this ruling. In Assignment of Error No. 6, defendant alleges the trial court erred in refusing to allow counsel to question members of the jury as to whether or not they heard the alleged comments. In Assignment of Error No. 7, defendant asserts the trial court erred in not allowing his counsel to question three particular jurors that counsel indicated he "had reason to believe" had heard the comments. In Assignment of Error No. 8, defendant argues the trial court erred in proceeding with sentencing without actually having ruled on the motion for new trial; while in Assignment of Error No. 10, defendant complains that if the trial court impliedly overruled the motion for new trial, it erred in overruling the motion.
The trial court is required to take evidence upon well-pleaded allegations of juror misconduct violating an accused's constitutional right to trial by a fair and impartial jury and to set aside the verdict and order a new trial upon a showing that a constitutional violation occurred and that a reasonable possibility of prejudice exists. State v. Graham, 422 So.2d 123 (La.1982); State v. Williams, 554 So.2d 141 (La.App. 2d Cir.1989), writ denied, 560 So.2d 21 (La. 1990).
Here, defendant has failed to present a substantial claim that his rights were violated. The record does not reveal that defense counsel attempted to subpoena Cleotis Hatter, the person who allegedly made the suspect remarks. Defendant introduced no evidence whatsoever to the effect that any juror actually heard the alleged statements. Defense counsel did not indicate why he thought three jurors in particular might have overheard the alleged comments. Nor did defendant introduce any evidence to show that any juror testified falsely on voir dire when each stated he had no knowledge of the case. Finally, one must consider the source of the new informationthe defendant's cellmater.[1] *423 Due to the inadequate pleading of the allegations of misconduct and the inadequate pleading of the alleged prejudice, we find no abuse of discretion in the trial court's refusal of defense counsel's request to question jurors regarding the validity of the verdict or in the denial of the motion for new trial. La.C.Cr.P. 851; State v. Graham, supra; State v. Prejean, 379 So.2d 240 (La.1979), cert. denied 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119, rehearing denied, 449 U.S. 1027, 101 S.Ct. 598, 66 L.Ed.2d 489 (1980); State v. Williams, supra. Assignments 6, 7 and 10 are without merit.
The fact that the trial court failed to expressly state that the motion for new trial was overruled is inconsequential. The clear implication of the judge's statements left no doubt that the motion was overruled. Therefore, Assignment of Error No. 8 is meritless.
Assignment of Error No. 9
In this assignment, defendant asserts the trial court erred in imposing an excessive sentence, not in accordance with sentencing guidelines. The record contains the sentencing guidelines which the trial court executed and filed. The written sentence, which was read in open court in defendant's presence, indicates that a presentence report was obtained which defendant and his attorney were permitted to evaluate. The court noted that defendant had a violent and extensive criminal record extending back to 1971, with a conviction for simple battery. He additionally had two convictions for aggravated assault, four for simple burglary, one for aggravated burglary and one for possession of a firearm by a convicted felony. His misdemeanor convictions include criminal neglect of family, unauthorized use of a movable and theft. At the time he committed this offense, he had only recently been released from prison.
Our review of the record and presentence report reveals the trial court was correct in its finding present all three of the factors which indicate that a sentence of imprisonment should be imposed. The court found absent 11 of the 12 factors which indicate the sentence should be suspended or probation imposed. The 12th factor was found inapplicable.
Considering the sentencing guidelines filed in the record and the sentence of the court set forth and explained both verbally and in writing, we conclude the trial court sufficiently articulated the reasons for the sentence.
Neither do we find the sentence constitutionally excessive, considering defendant's very extensive criminal history and the vicious, unprovoked attack on the victim which continued while she struggled to avoid being stabbed. The record is devoid of any mitigating factors. Under the circumstances, imposition of the maximum sentence for this fifth felony offender does not shock the conscience or constitute abuse of the trial court's great discretion. Therefore, we find this Assignment meritless.
Assignment of Error No. 5
After return of the guilty verdict, but prior to sentencing, defendant petitioned the trial court for appointment of a sanity commission. The trial court refused to entertain witnesses in support of the motion, denying it as untimely. To this ruling, defendant objected arguing that, pursuant to La.C.Cr.P. Art. 642, a defendant's mental capacity to proceed may be raised at any time.
Art. 642 states:
The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant *424 is found to have the mental capacity to proceed.
Specifically, the accused's mental capacity to proceed may be raised by the defense, even after conviction, as a reason why sentence should not be passed. State v. Clark, 367 So.2d 311 (La. 1979). Thus, the trial court clearly erred in denying defendant's motion as untimely.
However, the appointment of a sanity commission is not a perfunctory matter or a ministerial duty of the trial court and is not guaranteed to every accused in every case. State v. Nix, 327 So.2d 301 (La. 1975). The fact that the defendant's capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant. La.C.Cr.P. Art. 643; State v. Guidry, 449 So.2d 41 (La.App. 1st Cir.1984). If the court had heard defendant's witnesses and had found the testimony insufficient to create a reasonable ground to doubt defendant's mental capacity, the trial court's denial of the motion would not then have been necessarily erroneous. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Guidry, supra. However, without benefit of the testimony, it is impossible to determine whether defendant possessed the mental capacity to proceed.
Thus, we find it necessary to condition our affirmance of defendant's sentence, and remand this case to the trial court to allow defendant to present evidence with regard to his mental capacity to proceed at the time of the sentencing. If the court after hearing determines defendant was competent, the condition is removed. If the court determines defendant was then incompetent, the state can proceed as with any other incompetent defendant.
Decree
For the foregoing reasons, defendant's conviction is AFFIRMED. His sentence is CONDITIONALLY AFFIRMED and the case REMANDED to the trial court for the taking of evidence on defendant's motion for appointment of a sanity commission. If, after hearing the trial court finds no reasonable ground to doubt defendant's mental capacity at the time he was sentenced, the condition is removed. If the court determines defendant was then incompetent, it is instructed to VACATE THE SENTENCE and proceed according to the law regarding incompetent defendants.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, BROWN, PRICE, Ad hoc and FRED W. JONES, Jr., JJ.
Rehearing denied.
NOTES
[1] In State v. Clayton, 427 So.2d 827 (La. 1982) the Supreme Court determined that a witness who testified at the defendant's motion for new trial, could not be considered credible as she had been incarcerated in the same prison facility as the defendant, though housed in a separate area.