582 So.2d 306 (1991)
STATE of Louisiana
v.
Sterling J. MARTIN and Merlin J. Martin.
No. KA 900969.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Rehearing Denied July 31, 1991.
*307 John Schooenberg, Asst. Dist. Atty., Houam, plaintiff and appelleeState of La.
Norval Rhodes, Houma, for defendants and appellantsSterling Martin and Merlin Martin.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.
Merlin J. Martin and Sterling J. Martin were indicted for four counts of obstruction of justice, violations of La.R.S. 14:130.1. They pled not guilty and, after trial by jury, were convicted as charged on counts 1, 3 and 4. The jury found them guilty of attempted obstruction of justice on count 2. The trial court sentenced Merlin Martin, on count 1, to serve a term of four years imprisonment at hard labor and to pay a $3000 fine; on count 2, to serve two and one-half years at hard labor and to pay $3000 (concurrent with count 1); and on counts 3 and 4, to serve four years at hard labor and to pay $3000 (both counts *308 concurrent with count 1).[1] The trial court sentenced Sterling Martin, on count 1, to serve a term of three years imprisonment at hard labor and to pay a $2500 fine; on count 2, to serve two and one-half years at hard labor and to pay $2500 (concurrent with count 1); and on each of counts 3 and 4, to serve three years and three months at hard labor and to pay $2500 (both counts concurrent with count 1). The court gave defendants credit for time served on each count.
Defendants have appealed.

FACTS:
On September 24, 1986, Agents Mark Soignier and Paul Feyeraband of the Enforcement Division of the Louisiana Department of Wildlife & Fisheries were investigating a gill net complaint in waters near Lake Boudreaux and Grand Caillou Bayou in Terrebonne Parish. When they heard gunshots indicative of duck hunting coming from the Bayou Chauvin area, they decided to investigate. They first came upon a shrimp boat and checked the operator's license and the mesh on his net. They then observed a boat with three men in it which was pulling two pirogues and had another pirogue in the vessel. When it appeared that at least one or two of the men on the boat had noticed the enforcement agents, the man in the front of the boat, later identified as Nolan Lirette, threw some birds over the front of the boat; and the boat sped up. Agents Soignier and Feyeraband pursued the men and caught up with them. When both boats had stopped, the agents identified themselves, advised the three men of their constitutional rights, and told them the agents were investigating the charge of "wanton waste" for throwing the birds overboard. The agents observed teal ducks floating in the area, and Agent Feyeraband retrieved six ducks from the water. There were also four teal ducks observable in the boat near Nolan Lirette.
Agent Soignier then requested to see the hunting licenses for the three men. Mr. Lirette cooperated. As part of the investigation, the agents took possession of Mr. Lirette's gun and the birds next to him in the boat. Upon checking Mr. Lirette's license, Agent Soignier determined that Mr. Lirette had a proper hunting license and the required federal duck stamp. The other two men in the boat, Merlin Martin and Sterling Martin, who were brothers, did not have hunting licenses or any other identification. Because the agents observed three shell buckets in the vessel, they continued their investigation. Shell buckets are used by duck hunters to store shells and other hunting supplies.
Merlin Martin became defiant over being stopped and over the agents' requests. He claimed that he had not been hunting and that the ducks in the water were not his. Agent Soignier asked Merlin to hand him a twelve-gauge Browning automatic shotgun which was on the bottom of defendants' boat. The agent intended to check the gun to make sure it was plugged as required by law. The gun belonged to Sterling; he became belligerent at this request and demanded that Merlin hand the gun to him instead. After receiving the gun, Sterling loaded it and pointed it at Agent Soignier. Merlin then screamed for the gun and told Sterling to give it back so Merlin could kill both of the agents. While the gun was being passed, both agents drew their service revolvers. Merlin then pointed the gun at Agent Feyeraband. Agent Feyeraband told Merlin to put the gun down, but Merlin refused; he responded with various threats to kill the agents.
Recognizing the danger involved and the futility of further investigation, Agent Soignier released his grasp on defendants' boat to let the boats drift apart. As the *309 boats separated, Merlin told his brother to grab Nolan Lirette's gun from out of the agents' boat. Sterling took the gun. As defendants then left in their boat, Merlin, who was driving the boat, shouted profanity and told the agents that they were not issuing any citations and that he was a deputy sheriff.
After the altercation, Merlin and Sterling Martin went to a gas station and got the owner, Randall Crochet, to issue them a backdated hunting license with an issuance date of September 23, 1986. They also purchased duck stamps at the Post Office. Then, all three men went to the District Attorney's Office to file a complaint for attempted second degree murder against the agents. At the meeting with the District Attorney, Sterling and Merlin showed their hunting licenses and claimed they had been properly licensed.
Later, Nolan Lirette was found guilty in federal court of a tagging violation and not guilty of the wanton waste charge. Merlin and Sterling Martin jointly were indicted by the state with four counts of obstruction of justice. Count 1 alleges that defendants tampered with evidence by seizing Mr. Lirette's gun from the agents' boat. Count 2 alleges that defendants tampered with evidence by securing backdated hunting licenses. Count 3 alleges that defendants threatened Agent Soignier, and count 4 alleges that defendants threatened Agent Feyeraband.

DENIAL OF MOTION FOR NEW TRIAL:
In assignment of error number 1, defendants argue that the trial court erred when it denied their motion for new trial, which was filed on the ground that one of the jurors, Art Magee,[2] did not meet the one-year residency requirement at the time he was selected for the jury. Defendants claim it is "well settled" that a defendant is entitled to a new trial if a juror makes a false response to a question concerning his qualifications. The state responds that, because defendants did not question the juror on this subject, they have not met their burden of establishing that they exercised "reasonable diligence" to discover the defect before the completion of voir dire. In anticipation of this argument, defendants maintain that it was unnecessary for them to question Mr. Magee about this requirement because the court had already asked Mr. Magee if he met the requirement and Mr. Magee responded in the affirmative. Additionally, the state maintains that defendants failed to meet their burden of establishing that they did not know of the residence defect before the verdict. The state further contends that the motion was properly denied because no "injustice" was done to defendants and the defect had no "significant bearing" on the outcome of the trial.
The trial in the instant case took place on May 15 and 16, 1989. During the voir dire, the trial court questioned all of the prospective jurors at one time concerning their qualifications. The judge specifically asked, "Second, have each of you been a resident of the Parish of Terrebonne for at least one year prior to today?" The transcript reveals that all of the prospective jurors responded affirmatively. Neither the court nor counsel asked further questions about this qualification. Eventually, Art Magee was sworn as a juror and served as the foreman of this six-person jury.
On October 9, 1989, prior to the scheduled sentencing, defendants filed the motion for new trial at issue in this assignment. They alleged that Art Magee did not meet the one year residency requirement and that this information was made known to "movers" only a few days before they filed the motion for new trial. The allegations of fact in the motion were not sworn to by either the defense attorney or defendants. A memorandum filed by defendants in connection with the motion also alleged that defendants' attorney received an anonymous phone call, in late September 1989, informing him that Mr. Magee *310 had not been a resident of the parish for one year.
A week before the hearing on the motion, the prosecutor and defense attorney jointly stipulated that the defense attorney discovered the residency defect on a date after the verdict and that Mr. Magee moved into the parish in July of 1988. This stipulation is filed in the record and was mentioned briefly during the hearing held on the motion. At the hearing, the defense presented the testimony of three witnesses. Art Magee testified that he did not recall the judge asking him during voir dire if he had resided in Terrebonne Parish for a year. He also admitted that he moved to Houma in Terrebonne Parish in July of 1988. Prior to that time, he lived in St. Mary Parish, although he worked in Terrebonne Parish for a couple of years before moving. He maintained that he was in good faith when he answered the voir dire questions and that he did not remember answering any of the questions untruthfully. The two remaining witnesses established that Mr. Magee's utilities were connected in Terrebonne Parish on July 8, 1988, and that he registered to vote in the parish on August 5, 1988. After hearing argument, the trial court denied the motion. It found that the juror's voir dire response was made in good faith. The court also ruled that the juror's failure to meet the residence requirement did not deprive defendants of equal protection or due process.
In order to qualify to serve as a juror, the person "must" have "resided within the parish in which he is to serve as a juror for at least one year immediately preceding his jury service." La.C.Cr.P. art. 401(A)(1). Because Mr. Magee had resided in Terrebonne Parish for approximately ten months when he was selected to be a juror, he did not meet the qualifications of article 401.
Article 851 of the Louisiana Code of Criminal Procedure provides a procedure for requesting a new trial when the defendant discovers after the verdict that a juror was unqualified. See State v. Herrod, 412 So.2d 564 (La.1982). See also La.C.Cr.P. art. 795, comment (b). The pertinent portion of article 851 is as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment;

* * * * * *
Consequently, to take advantage of the defect and receive a new trial, the defendant must establish that he was not aware of the disqualification when the juror was accepted by him and that this information could not have been ascertained by due diligence. State v. Herrod, 412 So.2d at 566. See also State v. Baxter, 357 So.2d 271, 274 (La.1978). Courts generally have required that the defendant establish that he examined the juror, during voir dire, on the juror's qualifications, and that the jury answered falsely, in order to show he exercised due diligence. State v. Baxter, 357 So.2d at 274. See also State v. Hall, 255 La. 854, 233 So.2d 541, 542 (1970).
In the instant case, the joint stipulation established that defendants' attorney was not aware of the defect until after the verdict. However, neither the stipulation nor the evidence introduced in support of the motion revealed the extent of defendants' knowledge. Although Mr. Magee did not respond affirmatively when the court questioned the prospective jurors as to whether or not any of them knew defendants, it is still possible defendants had heard of Mr. Magee. The evidence also did not establish how the defense attorney discovered the defect. Arguments of counsel in memoranda are not evidence, and defendants' attorney did not testify concerning *311 the anonymous phone call. Thus, with the existing record, the defense has not satisfied its burden of showing the requisite lack of knowledge. See State v. Baxter, 357 So.2d at 274 (Supreme Court finds the defendant's proof of lack of knowledge inconclusive because, although one of defendant's attorneys testified he was unaware, the other attorney and the defendant did not testify).
Additionally, the defense presented no testimony or argument concerning its exercise of due diligence to discover the defect during voir dire. In reaching this conclusion, however, we do not adopt the positions advanced by the state. At the hearing held on the motion, the state argued that, to exercise due diligence, the defense attorney should have sent out private investigators to review the qualifications of jurors before the verdict was rendered. Such a requirement would be unduly burdensome and a waste of resources, absent a belief that a particular juror is being less than candid during voir dire. Voir dire of prospective jurors is specifically designed to test their qualifications and competency. State v. Baxter, 357 So.2d at 274. Thus, a separate investigation rarely is necessary.
The state also argues, before this Court, that defendants did not exercise due diligence because they did not question Mr. Magee on his qualifications during voir dire. The state apparently wants this Court to extend the Supreme Court's jurisprudence in this area to require a defendant to ask questions of a juror concerning the juror's qualifications, even if to do so would require defense counsel to repeat questions already asked by the trial judge. See State v. Neal, 550 So.2d 740, 744 (La. App. 2d Cir.1989), writ denied, 556 So.2d 55 (La.1990). Indeed, in Hall, the Supreme Court stated:
When the disqualification of a juror is relied upon as a basis for a new trial, defendant must show he questioned the juror on voir dire examination concerning the subject and the juror failed to disclose the relevant facts. Such a showing is essential to satisfy the requirement of reasonable diligence.
233 So.2d at 542. However, in the opinion, the Court does not note whether or not the juror had already been questioned, by either the trial judge or the prosecutor, concerning his qualifications; and, thus, the decision does not entirely support the state's position. We believe that if jurors already have been sufficiently questioned by either the court or the prosecutor, concerning their qualifications, and their responses do not give any indication that further inquiry is required, then a defense attorney should not be required to repeat the questions. See generally State v. Baxter, 357 So.2d at 274. Were we to adopt the rigid position advanced by the state, we would be requiring a defendant to repeat many of the questions usually asked by the trial judge; and we doubt that trial judges would welcome this repetition and lengthening of the voir dire process. See La.C. Cr.P. art. 786.
However, we still find that in this case defendants failed to establish the exercise of due diligence because they asked no questions of Mr. Magee during voir dire and made no attempt to evaluate his qualifications or demeanor. After the trial court made general inquiry into the backgrounds of all of the jurors, the state and defense were allowed to question the jurors further. However, during this time, neither the state nor the defense questioned Mr. Magee at all. We agree with the Supreme Court that "the defense should not be permitted to sit by during voir dire examination and learn as little as possible about a prospective juror, and then, after an unfavorable verdict, discover or seek out a ground for disqualification and demand a new trial." State v. Baxter, 357 So.2d at 274.
Furthermore, defendants' motion for new trial failed to comply with the requirements of La.C.Cr.P. art. 855:
A motion for a new trial based on ground (4) of Article 851 shall contain allegations of fact sworn to by the defendant or his counsel, showing:
(1) The specific nature of the error or defect complained of; and

*312 (2) That, notwithstanding the exercise of reasonable diligence by the defense, the error or defect was not discovered before or during the trial.
Defendants' motion did not contain sworn allegations of fact, and it did not allege facts showing that defendants exercised reasonable diligence but failed to discover the alleged lack of qualification of the juror before or during trial. See State v. Herrod, 412 So.2d at 566-67.
For the above reasons, we conclude that the trial court properly denied the motion for new trial. Moreover, we conclude that defendants suffered no "injustice" by Mr. Magee's service on the jury. See La.C. Cr.P. art. 851. There is absolutely no evidence that Mr. Magee was in bad faith in his voir dire responses. The assignment of error is without merit.

EVIDENTIARY RULINGS DISALLOWING TESTIMONY OF DEFENSE WITNESSES
In assignments of error numbers 2, 3, and 4, defendants argue that the trial court erred in disallowing certain testimony of three defense witnesses, Major Carl Metassa, Eugene J. Brien, Jr., and Phillip LeCompte, concerning the demeanor of Agent Soignier throughout his career as an enforcement agent. Defendants maintain that they should have been allowed to present evidence showing that Agent Soignier has a habit and reputation of using vulgarity and of being harsh and abrupt when dealing with the public. Defendants claim the agent's verbal abuse justified their indignant responses. On appeal, defendants specifically cite La.C.E. art. 404(B), as their authority for the introduction of the alleged prior acts by Agent Soignier.
Prior to trial, the state filed a motion in limine, seeking the exclusion of evidence it suspected the defense might try to introduce concerning prior acts by the enforcement agents with other people previously cited by the agents. In arguments held on the motion, defendants contended the attitude of the agents in other cases should be admitted to attack the agents' credibility, to show bias, and to show prior consistent behavior by the agents in dealing with other violators. The trial judge responded that evidence the agents were rude to other defendants was not relevant and was probably inadmissible but that evidence the agents had harassed these defendants in the past would be admissible to show bias. The court deferred ruling on the issue until it could hear the evidence at trial.
At the trial, defendants and Nolan Lirette testified for the defense. These three men at times contradicted their own trial testimony, contradicted the testimony of each other, and contradicted two written statements given to the District Attorney's Office in an attempt to file criminal charges against the agents. Defendants, of course, contradicted the testimony of the agents and tried to blame Randall Crochet for the hunting license being backdated. Generally, defendants also appeared to try to present a self-defense claim. Merlin testified that he pointed the gun at the agents only because he was fearful when they first pulled a gun on him. Defendants claimed they got angry only because of Agent Soignier's foul language. Agent Soignier denied using profanity with defendants. Merlin admitted lying to get the hunting license and lying in his statements to the District Attorney's Office; but he explained that he lied on these occasions to save his job with the Sheriff's Office and would never lie at trial to avoid a conviction and possible jail time.
In an attempt to establish that, on prior occasions with other violators, Agent Soignier used profanity and was abrupt, defendants called Major Carl Metassa to testify. Major Metassa was an enforcement officer in charge of the region where Agent Soignier worked. After the state's objection, Major Metassa testified outside the jury's presence that, although he was unsure of the exact number, in the past he had received one to two complaints each year about Agent Soignier. Most of the complaints were from other agents or public officials, who complained that Agent Soignier was rough and abrasive. The Major was not sure if any complaints were received concerning bad language. He did *313 not think the number of complaints was unusually high. Other agents were the subject of more complaints; and Agent Soignier issued over 1000 citations a year. Major Metassa explained that he also did not think the complaints showed any particular habits on Agent Soignier's part. Although Major Metassa met with Agent Soignier twice concerning the complaints, he took no formal action against the agent. Defendants' attorney argued that evidence of these specific complaints should be admitted under La.C.E. art. 404(B), as evidence of other acts, and under article 405, as evidence of character. The trial court found insufficient evidence from these few complaints to establish a particular habit and disallowed the testimony. Defendants objected to the court's ruling, but did not offer a proffer on the details of the specific complaints.
Defendants also called Eugene J. Brien, Jr., to testify that, when Agent Soignier issued a citation to Mr. Brien in October of 1987, the agent used profanity, was abrupt, pushed Mr. Brien, and expressed displeasure that Mr. Brien had been found not guilty on a previous charge. This predicate was established outside the presence of the jury in response to the state's objection. Defendants' attorney argued that any evidence which is relevant should automatically be admitted and that Mr. Brien's testimony was relevant to show that Agent Soignier treated Mr. Brien similarly to the way he treated defendants. The attorney also argued, in essence, that, because the agent behaved abruptly previously, he must have behaved the same way with defendants. The judge sustained the state's objection and again ruled that, because of the large volume of tickets issued, this incident with Mr. Brien was insufficient to establish a particular habit or routine. When the jury returned, defendant persisted in the same line of questioning, and the court disallowed this additional testimony. Defendants also called Phillip LeCompte, a witness to Mr. Brien's altercation with Agent Soignier. When the court sustained the state's objection to Mr. LeCompte's testimony, defendants' attorney referred to his previous arguments. Defendants did not proffer any testimony from Mr. LeCompte nor any additional testimony from Mr. Brien.[3]
Both before the trial court and this Court, defendants have argued that the issue of the admissibility of the questioned testimony should have been presented to the jury. However, it is well-settled that questions concerning the admissibility of evidence should be resolved by the trial court and not the jury. La.C.E. art. 104(A).
Defendants' main argument in support of admitting the evidence is that the evidence is relevant and, thus, should be admitted. Article 402 of the Louisiana Code of Evidence provides that "[a]ll relevant evidence is admissible, except as otherwise provided." The Code defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.C.E. art. 401.
To determine relevancy, the elements of the offense and the defendant's defense must be examined. The trial court charged the jury on the following portions of the obstruction of justice statute:
A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

*314 (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
(b) At the location of storage, transfer, or place of review of any such evidence.
(2) Using or threatening force toward the person or property of another with the specific intent to:
(a) Influence the testimony of any person in any criminal proceeding;
(b) Cause or induce the withholding of testimony or withholding of records, documents, or other objects from any criminal proceeding;
(c) Cause or induce the alteration, destruction, mutilation, or concealment of any object with the specific intent to impair the object's integrity or availability for use in any criminal proceeding;
(d) Evade legal process or the summoning of a person to appear as a witness or to produce a record, document, or other object in any criminal proceeding;
(e) Cause the hinderance, delay, or prevention of the communication to a peace officer, as defined in R.S. 14:30, of information relating to an arrest or potential arrest or relating to the commission or possible commission of a crime or parole or probation violation.
* * * * * *
La.R.S. 14:130.1(A)(1) & (2).
Although defense counsel did not directly argue self-defense to the jury, the jury was charged on the defense. La.R.S. 14:19 provides for the defense when a defendant uses force or violence in a nonhomicide situation:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
Under La.R.S. 14:21, an aggressor cannot claim self-defense:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Defendants were allowed to present testimony that the agents treated defendants in this case in a vulgar, abrupt, and harsh manner. Thus, the issue before this Court is whether or not evidence that the agents had previously treated other violators in a similar manner was also admissible. On appeal, defendants do not review the facts of the offense, nor do they specifically articulate why these prior acts were relevant. Consistently, however, defendants have maintained that, because the agents treated other violators abruptly, it was likely they treated defendants in a similar manner.
Defendants specify La.C.E. art. 404(B) as the provision which allows admission of the questioned testimony.[4] The applicable *315 portion of the article provides as follows:
[B. Other crimes, wrongs, or acts.]
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

* * * * * *
The language of article 404(B)(1) clearly does not support defendants' position. The main argument defendants made before the trial court to allow admission of Agent Soignier's prior acts was, in essence, that the evidence would prove "he acted in conformity therewith." However, article 404(B)(1) specifically disallows evidence introduced for this purpose. Defendants also verbalized generally that the prior acts evidence should be admitted to show the agent's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident;" but defendants have never specified how the agent's motive, etc. had a "specific independent relevance." See G. PUGH, R. FORCE, G. RAULT, JR., K. TRICHE HANDBOOK ON LOUISIANA EVIDENCE LAW, p. 240, art. 404, Authors' Note (5) (1991) [hereinafter cited as HANDBOOK ON LOUISIANA EVIDENCE LAW]. For example defendants never argued or proffered any evidence that Agent Soignier's desire in the cases he handles is to provoke the violator to the point where the violator commits more serious offenses.[5] Defendants also argue generally that the evidence was "res gestae" and, thus, admissible under the final language of article 404(B)(1): "when [the evidence of other acts] relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." However, the prior complaints against Agent Soignier and the citation issued to Mr. Brien in October of 1987 were not "part and parcel" of the events which occurred on September 24, 1986, and, thus, the final portion of article 404(B)(1) also does not support admission of this testimony. See HANDBOOK ON LOUISIANA EVIDENCE LAW, supra, p. 241, art. 404, Authors' Note (6) (1991).
In ruling on the state's objections, the trial court considered the applicability of La.C.E. art. 406. This article provides that "[e]vidence of the habit of a person... is relevant to prove that the conduct of the person ... on a particular occasion was in conformity with the habit or routine practice." When the evidence of a habit consists of "specific instances of conduct," the instances must be "sufficient in number to warrant a finding that the habit existed or that the practice was routine." La.C.E. art. 406. As the trial judge correctly recognizes, the one instance with Mr. Brien and the one or two complaints annually made to Major Metassa that Agent Soignier was rough and abrasive were insufficient *316 in number to establish that Agent Soignier has a course of behavior which is regularly repeated under like circumstances. See HANDBOOK ON LOUISIANA EVIDENCE LAW, supra, 246, art. 406, Authors' Note (1) (1991).
Defendants do not argue on appeal that the evidence of Agent Soignier's prior acts was admissible to impeach his testimony. As the state argued before the trial court, defendants' evidence did not meet the requirements of La.C.E. art. 608(A), which allows, for impeachment purposes, introduction of the witness' general reputation for truthfulness or untruthfulness when a foundation is met. See also La.C.E. art. 608(B). Additionally, defendants never specifically argued before the trial court that the evidence of Agent Soignier's alleged use of vulgar language with Mr. Brien was admissible to impeach the agent's testimony on cross-examination which denied using profanity in any case other than perhaps the word "damn." Instead, defendants repeatedly sought substantive admission of the evidence. Arguably, this denial by the agent "opened the door" to impeachment with at least part of Mr. Brien's testimony. See La.C.E. art. 607, comment (o). Article 607(D)(2) provides as follows:
Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
However, the foundation required by article 613 for admission of extrinsic evidence to attack credibility was not established by defendants.
Even if the court's ruling had been in error, the error would not be reversible because a "substantial right" of the defendants was not affected. See La.C.E. art. 103(A). The only evidence "proffered" by the defense was the testimony introduced outside the jury to establish a predicate for admission of the evidence. See La.C.E. art. 103(A)(2). This proffered testimony establishes only one specific incident with Mr. Brien which occurred after the date of the instant offenses and a few generalized complaints made to the Department of Wildlife and Fisheries. We find that any error in disallowing the testimony would have been harmless beyond a reasonable doubt. See State v. Lee, 524 So.2d 1176, 1191 (La.1988) (on rehearing). See also Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Although Agent Soignier's testimony was important in the prosecution's case, he was corroborated by Agent Feyeraband and the prosecution's case was strong. Defendants' testimony was incredible, and even under their version of the facts they were not justified in pulling a gun on the agents merely because the agents allegedly used profanity. We also note that these final assignments of error relate only to counts 3 and 4. Defendants did not claim they seized Mr. Lirette's gun from the agents to use the gun in self-defense, and the self-defense claim does not relate to defendants having secured backdated hunting licenses. Thus, even if error had occurred, the error would not relate to counts 1 and 2.
Thus, we conclude that the trial court did not err, under the Louisiana Code of Evidence, in disallowing the testimony. Defendants also briefly argue that the trial court's rulings violated defendants' constitutional right to present a defense. Even if the Louisiana Code of Evidence prohibits the introduction of certain testimony, in those rare cases where the evidentiary rule impermissibly impairs the defendant's right to present a defense, the evidence still should be admitted. See La.Const. art. 1, § 16; State v. Gremillion, 542 So.2d 1074, 1078-79 (La.1989). In the instant case, however, defendants were not prohibited from presenting their defense. Nolan Lirette also was in the boat with defendants, and he and defendants testified as to their version of the facts.
These assignments of error are without merit.
*317 CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] In sentencing Merlin Martin on counts 3 and 4, the trial judge did not specifically state that the sentence imposed for those counts was being imposed on each count. Patent sentencing error occurs when a trial court, in sentencing for multiple counts, does not indicate that the sentence is being imposed separately for each count. See State v. Russland Enterprises, Inc., 542 So.2d 154 (La.App. 1st Cir.1989); State v. Brady, 506 So.2d 802, 803 (La.App. 1st Cir.1987). However, because subsequent comments by the trial judge in this case indicate his intent to impose separate sentences on counts 3 and 4, we do not find the sentences to be in error.
[2] The transcript of the voir dire lists the juror's name as Art "McGee." However, the court's jury list and the transcript of the motion for new trial hearing, at which time the juror testified, uses Art "Magee."
[3] After the guilty verdicts, defendants filed a motion for new trial concerning the issues raised in these three assignments. After hearing argument, the trial court denied defendants' request for a new trial on this ground.
[4] Defendants do not argue the evidence was also admissible under La.C.E. art. 404(A). Article 404(A) generally disallows admission of evidence of a person's character or a trait of his character for the purpose of proving he acted in conformity therewith on a particular occasion. A limited exception to this general rule allows the introduction of "evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence...." La.C.E. art. 404(A)(2). For this exception to apply, the requirements of article 405 also must be met. Generally, article 405 allows a party to prove a person's character with testimony as to "general reputation" only, and a particular foundation is required. La.C.E. art. 405(A) & (C). In this case, defendants never attempted, nor expressed a desire, to meet these requirements.

Article 405(B) also authorizes proof of character by specific instances of conduct, but only "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, such as in a prosecution for defamation or when there is a defense of entrapment." When entrapment is raised as a defense, the focal point of the inquiry is on the predisposition of the defendant to commit the crime at issue as well as on the conduct of the police. State v. Batiste, 363 So.2d 639, 641 (La. 1978). As a result, Louisiana law allows the prosecution, in an entrapment case, to substantively introduce evidence of other activity by a defendant to show the defendant's predisposition to commit the crime. La.C.E. art. 405(B). See also State v. Batiste, 363 So.2d at 644. In the instant case, however, the agents' predisposition to be abrupt, violent, and profane with the public was not an essential element of the charge or defense. For example, for defendants to have established they acted in self-defense, it was not necessary for them to establish that these agents usually treated the public in a violent manner, but only that on the date of this offense the agents used unreasonable and unnecessary force on these defendants. See La. R.S. 14:8(1) & (2) & 14:19. Thus, the agents' predisposition to be abrupt and harsh was not an "essential element" of a charge or defense and, therefore, was not admissible under article 405(B).
[5] Agent Soignier testified that this was the first time he had ever been held at gunpoint by a violator or had ever had to draw his service revolver. Agent Feyeraband testified similarly.