623 So.2d 59 (1993)
STATE of Louisiana
v.
Cecil FOLSE.
No. 92 KA 1793.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
*61 Camille A. Morvant, II, Asst. Dist. Atty., Thibodaux, for plaintiff-appellee State of La.
Wayne D. Mancuso, Don C. Gardner, Harahan, for defendant-appellant Cecil Folse.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
Defendant, Cecil David Folse, was charged by bill of information with two counts of sexual battery, violations of LSA-R.S. 14:43.1. Folse entered pleas of not guilty and, after trial by jury, was found guilty as charged on both counts. Subsequently, Folse was sentenced to imprisonment in the parish jail for consecutive terms of two years on each count, with credit for time served. The trial court suspended these terms and placed Folse on supervised probation for five years, subject to various conditions, including incarceration in the parish jail for consecutive terms of nine months on each count with credit for time served. Folse has appealed, *62 urging seven assignments of error, as follows:
1. The trial court erred by allowing the trial to go forward over objection since the bill of information was defective in that it charged Folse in both counts with violating "R.S. 43.1A(1)(2)" and was not amended before trial.
2. The trial court erred by denying Folse's motion to appoint a sanity commission.
3. The jury was improperly constituted since juror Brenda Coxen indicated that her address was outside Lafourche Parish, and the trial court erred by not conducting a more extensive voir dire to determine what was the permanent residency of this juror.
4. The bill of information, which was not amended, did not identify the victim of the offense charged in either count.
5. The trial court erred by allowing Dr. William Janzen, a prosecution witness, to testify as to gross hearsay and to assert directly and indirectly the truthfulness of the victims' testimony.
6. The trial court erred by denying Folse's motion for new trial based upon trial counsel's ineffective assistance of counsel.
7. Folse also assigns as error all errors patent on the face of the record.[1]
The record reflects that the victims of the instant offenses were two young girls. At the time of trial,[2] Folse was thirty-three years old; Victim One, a nine-year-old, was in the fourth grade; and Victim Two, an eight-year-old, was in the second grade.[3] Victim One is Folse's niece, and Victim Two and her family were neighbors of Folse.[4]
The facts relating to each of the offenses, which occurred inside Folse's house, follow.
Regarding the offense committed against Victim One, Victim One related that, in October of 1991, Folse came home during the early morning hours sometime after midnight. At the time, Victim One was sleeping on the sofa in the house. After Folse came home, he put on his "purple LSU" shorts. While Victim One was on the sofa, Folse rubbed his "private" on her face; and, while Victim One was watching television, Folse put his "private" on the television. Thereafter, while on her way to get something to drink, Bridget Folse, Folse's wife, came into the room where Victim One and Folse were and observed that Folse had his hands inside his pants. When Bridget went back to her bedroom, Victim One followed her to the bedroom and reported to her that Folse had "showed [her] his private."
According to Victim One, prior to the incident referenced above, Folse had made her touch his "private." Regarding these prior incidents, she testified that Folse would take her hand and rub it on his "private" and that he would also rub his "private" in her presence. She stated that, in these instances, "white stuff" would come out of Folse's "private." Folse would also rub his "private" on her face. Victim One further testified that, while she was swimming in the swimming pool at Folse's house, Folse would touch her "private" by pulling her swimming suit "to the side." Victim One also indicated that she had previously seen State Exhibit S-1, a frisbee. She stated that Folse would put the frisbee on his "private" and tell her to take it off. He did this on more than one occasion, once "in his chair" and once in the barn.
*63 Victim One testified that Folse began engaging in such conduct with her when she was in the third grade. She also stated that the conduct spanned a period of approximately a year and a half.
Regarding the offense committed against Victim Two, Victim Two testified that she had seen Folse with the frisbee. At the time, Folse was wearing "the purple shorts with the tiger" while sitting on his chair in his house; and he had the frisbee on his "private." She turned her back to Folse who grabbed her hand and put it on his "private." When she turned around, she saw Folse's "private." Victim Two then "leaned back" and ran outside the house. When she returned inside, Folse again grabbed her hand and he put it on his "private." A few days after the incident, Victim Two related the incident to her mother.
Bridget Folse informed Victim One's parents of the incident related to her by Victim One. On the day after the incident, Lafourche Parish Sheriff's Detective Warren Vedros interviewed Victim One in connection with allegations made against Folse. Folse's arrest followed.

ASSIGNMENTS OF ERROR NUMBERS ONE AND FOUR
In these assignments, Folse contends the bill of information is defective because it fails to name a victim in either count, charges him in both counts with violating "R.S. 43.1A(1)(2)," and was never amended. Folse also contends the trial court erred by designating count one as relating to Victim One and count two as relating to Victim Two. Folse asserts that the bill should have been "corrected" and that he should have been rearraigned so that he would have been made aware of the charges.
In regard to the failure of the bill to name a victim for either count, the record reflects that, after the selection and swearing of the jury and before the reading of the bill of information, the following exchange occurred out of the jury's presence:
THE COURT:
Let the record reflect the defendant is present with his attorney, Mr. Rolling.
Gentlemen, before we proceed, I notice that the two counts do not specify the name of the victim. I would recommend that we designate Count 1, the count pertaining to [Victim One], and Count 2, the count pertaining to [Victim Two], or we could have the D.A. formally amend the bill and have a re-arraignment provided the defendant waive [sic] delays and agree [sic] to continue, you know, directly with the trial.
How would counsel like to proceed?
THE STATE:
The State would so move to amend. I could do that at this particular point.
THE COURT:
Any objection, Mr. Rolling?
MR. ROLLING:
For the record, yes, we object to it.
THE COURT:
For the record, no objection? I didn't hear.
MR. ROLLING:
No, for the record, we object.
THE STATE:
I'd like counsel to state his reasons.
THE COURT:
Yes, what is the basis of the objection?
MR. ROLLING:
If it please the Court, I just want to protect the record. There's a couple of objections I'm going to make later on in the trial.
THE COURT:
Okay. I'm going to deny the motion to amend. We're simply going to designate [Victim One] as Count 1 and [Victim Two] as Count 2.
Okay, bring the jury in, please.
Thereafter, at the beginning of Victim One's testimony, defense counsel objected to the introduction of evidence as to any matter other than income tax on the ground that the bill of information did not charge Folse with a crime but rather with violating Title 43 of the Louisiana Revised Statutes.[5] The prosecutor *64 responded by stating that Folse was charged with violating Title 14 and not Title 43 and that Folse had not been prejudiced by the obvious failure of the bill to include the designation of Title 14 as the Title violated. The trial court then overruled defense counsel's objection.
Our examination of the bill of information reveals that, in charging Folse with two counts of sexual battery, both counts in the bill substantially track the wording of LSA-R.S. 14:43.1A(1) and (2). However, in both counts, the citation to the statute violated is incomplete since the bill refers in each count to "R.S. 43.1.A(1)(2)" instead of "R.S. 14:43.1A(1) and (2)," the complete citation which should have been used. Additionally, neither count names a victim of the offense charged in the count.
LSA-C.Cr.P. art. 464 provides as follows:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
LSA-C.Cr.P. art. 473 provides as follows:
When the name of the person injured is substantial and not merely descriptive, such as when the injury is to the person, as in murder, rape, or battery, the indictment shall state the true name of the victim or the name, appellation, or nickname by which he is known. If the name, appellation, or nickname of the victim is not known, it is sufficient to so state and to describe him as far as possible. In stating any name of a victim it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.
It has been consistently held that where an accused has been fairly informed of the charge against him by the indictment and has not been prejudiced by surprise or lack of notice, the technical sufficiency of the indictment may not be questioned after conviction where no objection was raised to it prior to the verdict and where, without unfairness, the accused may be protected against further prosecution for any offense or offenses charged by it through examination of the pleadings and the evidence in the instant prosecution. State v. James, 305 So.2d 514, 516-517 (La.1974); State v. Taylor, 553 So.2d 873, 884 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990). See also State v. Harris, 478 So.2d 233, 234-235 (La.App. 3rd Cir.1985).
In this case, although Folse's trial counsel objected "for the record" to the trial court's noting the failure of the bill of information to name the victims and designating named victims for each count, Folse's trial counsel never asserted at the trial court level that the omissions in the bill prejudiced Folse by surprise, lack of notice, or not being fairly informed of the charges. To the contrary, we find that the evidence introduced at trial clearly reveals that Folse was fully aware of the allegations forming the basis of both offenses and the names of each of the victims. Folse testified that he learned of the charges when his wife called him at work and so informed him. This finding is supported by Exhibit D-1, a transcript of an October 28, 1991 statement given by Folse to Detective Warren Vedros, and Folse's trial testimony. In the statement, Folse was questioned as to the offense committed against both victims who were identified during the questioning by name. Folse identified D-1 as the statement he gave to Vedros and stated that it is a true statement. Folse testified that he gave the statement because he had heard about the charges made against him and wanted to find out what they were all about. In further testimony, Folse indicated that there was no confusion on his part as to the charges for which he was being tried.
*65 Clearly, the bill of information should have been amended to identify the victims of both counts and to give the complete statutory citation of the statute violated. Thus, the trial court erred by denying the State's motion to amend the bill to specify the names of the victims as required by LSA-C.Cr.P. art. 473. However, because Folse has failed to establish that he was actually prejudiced by the failure of the bill of information to identify the victims or the failure of the bill to include the complete statutory citation, these failures and the trial court's ruling denying the State's motion to amend were harmless and do not constitute reversible error. Accordingly, these assignments lack merit.

ASSIGNMENT OF ERROR NUMBER TWO
By means of this assignment, Folse contends the trial court erred by denying his motion to appoint a sanity commission.
On March 9, 1992, the day of Folse's trial, prior to its commencement, Folse's trial counsel orally moved for continuance of the trial and appointment of a sanity commission. Counsel explained that the motion was based on an incident which had happened during the preceding week and because of a conversation he had with Folse earlier that morning and what counsel had learned late on the preceding night. Thereupon, the trial court indicated its willingness to hear evidence on the motion. An evidentiary hearing on the motion followed.
During the hearing, Folse presented his own testimony and that of Debra Ann Loupe, his sister, and Theresa Collins Folse, his sister-in-law. The State presented no evidence during the hearing.
Loupe testified that, on Monday of the preceding week, she received a call from Folse. During the conversation, Folse told her that he had called because he loved her and that he wanted her to watch over his kids and make sure they were okay. Loupe asked Folse what was the matter, and Folse kept responding "nothing." She asked Folse: "[W]hy are you talking like this?" Again Folse's response was "nothing."
Loupe became concerned and called the coroner. She told the coroner that Folse was "pretty upset," and explained the circumstances that Folse was facing. Folse had been drinking. Folse's life was "in shambles;" and he was "going through a lot," considering his divorce, trouble with his wife, kids and his job. Folse could not make "ends meet," and Loupe surmised that all of the foregoing was more than Folse could "handle," and was the reason that Folse was very depressed and confused. Loupe brought Folse to the coroner, who talked to Folse but did not commit Folse to any institution.
Loupe testified that during the "last few days" Folse "stays to himself" in his room and does not talk about anything. At night Folse goes out and drinks to the point that he "can't drink no [sic] more." Loupe stated that Folse's recent conduct was new to him and that he had quit his job on the day he called her. Loupe further testified that Folse did not talk to her about suicide, but stated that she knew that Folse was looking for his gun and that her mother and grandmother had hidden the gun because Folse was talking as if he was going to commit suicide.
Theresa Folse testified that she was with Folse when he met with the coroner during the preceding week. According to her, Folse later went to the Mental Health Clinic where he was supposed to be reevaluated.
Folse testified that he remembered being brought to the coroner's office for an evaluation. Folse acknowledged that the coroner did not commit him to any facility. According to Folse, he "guess[ed]" that the coroner wanted him to "go talk to someone." Folse stated he remembered being told to go to the Mental Health Clinic. At the Clinic, he spoke to a man whose name he does not remember. Folse was not evaluated at that time but, was given an appointment to return to the facility on March 20, 1992.
In denying Folse's motion, the trial court ruled that, after hearing the evidence presented at the hearing, it had no doubt Folse possessed the mental capacity to proceed. The court stated that it observed Folse in court and noted that Folse was alert, welloriented *66 and had answered questions posed to him in a reasonable manner. The court further noted that Folse was probably undergoing some stress and depression but it had no reason to believe, on the basis of the evidence presented, that Folse was unable to comprehend the nature of the proceedings or to assist counsel in his defense. Accordingly, the court stated there was no reason to delay the proceedings by ordering the appointment of a sanity commission and granting the continuance requested by Folse.
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks capacity to understand the proceedings against him or to assist in his defense. LSA-C.Cr.P. art. 641; State v. Comeaux, 514 So.2d 84, 91 (La.1987). The appointment of a lunacy commission is not a perfunctory matter or a ministerial duty of the trial court, nor is it guaranteed to every accused in every case. The fact that the defendant's capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant; rather, he must have reasonable grounds to doubt the defendant's capacity. LSA-C.Cr.P. art. 643; State v. Guidry, 449 So.2d 41, 44 (La.App. 1st Cir.1984). The ordering of a sanity commission to inquire into the defendant's present capacity to proceed rests in the sound discretion of the trial court. State v. Wilkerson, 403 So.2d 652, 658 (La.1981); State v. Guidry, 449 So.2d at 44.
Based upon our review of the record, we find that the trial court's refusal to appoint a sanity commission is supported by the record. Hence, we find no abuse of discretion by the trial court.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By means of this assignment, Folse contends the trial court erred by allowing Brenda Coxen to serve on the jury when it was never established that she met the requisite juror qualifications. LSA-C.Cr.P. art. 401 A(1) requires that a juror reside within the parish in which he is to serve as a juror for at least one year immediately preceding his jury service. The record reflects that during voir dire the trial court noticed an address of Metairie for prospective juror Brenda Coxen. Thereupon, the trial court questioned Coxen as follows:
THE COURT:
Yeah. You show an address of Metairie, Ms. Coxen. Are you living in Metairie now?
MS. COXEN:
I reside really in Thibodaux, but I work Monday through Friday, and I come on the weekend and stay in Thibodaux.
THE COURT:
You work in Metairie and then
MS. COXEN:
I work in New Orleans.
THE COURT:
In New Orleans?
MS. COXEN:
Right. My actual home is Thibodaux on Back Street and when I got the formI stay Monday through Friday sometimes for work and I come home on the weekend. So, I actually live here in Thibodaux. I spend Monday through Friday working.
THE COURT:
Thibodaux is where you regard your home?
MS. COXEN:
Yes.
THE COURT:
And you do maintain a residence here?
MS. COXEN:
Absolutely.
THE COURT:
Good. Thank you, Ms. Coxen. That clears it up. Proceed.
Thereafter, without objection by the State or defendant, Coxen was selected and sworn as the sole alternate juror.
LSA-C.Cr.P. art. 401 A(1) provides as follows:
A. In order to qualify to serve as a juror, a person must:
(1) Be a citizen of the United States and of this state who has resided within the *67 parish in which he is to serve as a juror for at least one year immediately preceding his jury service.
As reflected by the questioning and responses of Coxen quoted above, it is clear that Coxen resided in Thibodaux (Lafourche Parish); however, because the record is silent as to whether or not Coxen resided in Lafourche Parish for one year immediately preceding her selection to serve on the jury as required by LSA-C.Cr.P. art. 401 A(1), it was never established that Coxen met the one-year residency requirement.
Article 851 of the Louisiana Code of Criminal Procedure provides a procedure for requesting a new trial when the defendant discovers after the verdict that a juror was unqualified. See State v. Herrod, 412 So.2d 564 (La.1982). See also LSA-C.Cr.P. art. 795, comment (b). The pertinent portion of article 851 is as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . . .
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment....
Consequently, to take advantage of the defect and receive a new trial the defendant must establish that he was not aware of the disqualification when the juror was accepted by him and that this information could not have been ascertained by due diligence. State v. Herrod, 412 So.2d at 566; State v. Martin, 582 So.2d 306, 310 (La.App. 1st Cir.), writ denied, 588 So.2d 113 (La.1991). Courts generally have required that the defendant establish that he examined the juror, during voir dire, on the juror's qualifications, and that the juror answered falsely, in order to show he exercised due diligence. State v. Baxter, 357 So.2d 271, 274 (La.1978); State v. Martin, 582 So.2d at 310.
In this case, based on the questioning of Coxen quoted above, it is clear that the juror's alleged failure to meet the residency qualification is not a defect, that, notwithstanding the exercise of reasonable diligence by Folse, was not discovered before the verdict. Further, there is absolutely no evidence that Coxen was in bad faith in her voir dire responses. As an alternate juror, Coxen was discharged by the trial court immediately before deliberations began. Hence, we conclude that the trial court correctly denied Folse's motion for new trial on the basis of Coxen's alleged failure to meet the residency requirement.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By means of this assignment, Folse contends the trial court erred by allowing State witness, Dr. William Janzen, to testify as to the ultimate issues in the case, i.e., the truthfulness of the victims, matters strictly within the province of the jury.
The record reflects that Dr. Janzen qualified and was accepted by the trial court as an expert in psychology with particular expertise in child abuse. He had opportunities to interview, test and evaluate both victims on three occasions in January of 1992. He alone conducted the interviews.
Regarding the issue raised in this assignment, Dr. Janzen testified, without objection on direct examination that he believed that Victim Two was telling the truth about having been sexually abused. Elaborating, Dr. Janzen stated the reason for this conclusion was not because he thought the girl could not lie but, rather, because all the detail and information she gave him was consistent with the dynamics of sexual abuse.
Thereafter, Dr. Janzen's direct examination focused on questioning concerning the truthfulness of Victim One, as follows:
Q. In reference to your testing and evaluation of [Victim One], is it your opinion she's telling the truth?
A. Yes.

*68 MR. ROLLING:
Objection to the question about telling the truth. He hasn't asked the question about whether she had been sexually abused or not. Rephrase the question.
THE COURT:
I think the objection is proper. I don't believe a witness can testify as to whether or not another witness is telling the truth. So, please rephrase.
THE STATE:
I'll rephrase it.
THE COURT:
Okay. Ladies of the Jury, just disregard that last answer and proceed, Mr. Morvant.
THE STATE:
Thank you, Judge.
BY THE STATE:
Q. In your testing and evaluation of [Victim One], does she meet the dynamics of a sexually abused child?
A. The information that she gave me is consistent with the dynamics of sexual abuse.
Q. By the way, you're paid to come here, right?
A. That's correct.
Q. You don't do this for a hobby?
A. No, I don't.
THE STATE:
Okay. Thank you. No further questions, Judge.
Thereupon, Folse's trial counsel began his cross-examination of Dr. Janzen, as follows:
BY MR. ROLLING:
Q. To clear up the record, Doctor, when you were talking about [Victim Two] and the District Attorney asked you if you thought she was telling the truth and you said you felt that from the way she answered the questions that she was sexually abused, you can't tell us whether she was telling the truth or not, can you?
A. That's right, and that's the accurate way to present it, is to say that the information that the child gave is consistent with the dynamics of sexual abuse.
Q. Because you don't know really of your own knowledge whether [Victim One] is telling the truth or whether [Victim Two] is telling the truth?
A. Technically speaking, I cannot say whether that actually happened to her or not. All I can say is that the information that she gave me is consistent with the dynamics of sexual abuse.
The Louisiana Code of Evidence Article 702 provides that, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, an expert witness may testify thereto in the form of an opinion or otherwise. However, expert opinion testimony is inadmissible on the issue of credibility under Article 608 of the Code. See Official Comment (e) to Article 702. See also Baker, Psychological Expert Testimony on a Child's Veracity in Child Sexual Abuse Prosecutions, 50 La.L.Rev. 1039 (1990).
Consequently, the trial court correctly sustained Folse's objection to the prosecutor's question as to whether or not it was Dr. Janzen's opinion that Victim One was telling the truth and correctly admonished the jury to disregard the witness' affirmative response to the question. Although defense counsel failed to object to the State's initial questioning which elicited Dr. Janzen's testimony that it was his opinion that Victim Two was telling the truth about being sexually abused, Folse's cross-examination served to correct that testimony by making clear that the witness could not say whether or not Victim Two was telling the truth but could say only that the information given by Victim Two was consistent with the dynamics of sexual abuse. Under these circumstances, we find that the witness' testimony concerning Victim One and Victim Two, as corrected on cross-examination, was admissible under the Code of Evidence. See LSA-C.E. art. 702. See also State v. Patrick, 513 So.2d 449, 452 (La.App. 2nd Cir.1987), writ denied, 519 So.2d 140 (La.1988).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
In this assignment, Folse contends the trial court erred by denying his motion *69 for new trial based on the ineffectiveness of his trial counsel. Folse's claim of ineffective counsel is predicated on several allegations of deficient performance by trial counsel.
Initially, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1374-75 (La.1990) and 604 So.2d 1297 (La.1992). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction [or death sentence]. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
The record reveals that the motion for new trial filed by Folse's appellate counsel was heard on July 21, 1992. Although Folse's appellate counsel presented arguments to the trial court at the hearing, counsel presented neither affidavits nor evidence at the hearing to support the claims made in the motion, choosing instead to rely solely on the record as support for the claims. At the conclusion of the hearing, the trial court denied the motion and in doing so, the court specifically found that Folse had failed to establish that his trial attorney's representation was ineffective under Strickland.
In this case, Folse's allegations of deficient performance of his trial counsel include four allegations as to which the record does not disclose sufficient evidence to determine whether or not they have any merit.[6] One, trial counsel failed to meet with and interview Folse prior to trial to discuss the facts, gather facts necessary to present a defense, and discuss the merits of the case and trial preparation with Folse. Two, trial counsel failed to investigate and discover facts surrounding the commission of the alleged crimes and conduct a diligent independent investigation which would have discovered witnesses in advance of trial. Three, trial counsel failed to seek and discover State expert witnesses to establish and prepare a defense. Four, trial counsel failed to prepare for Prieur evidence to be used by the State. However, because support for these allegations is not evident in the record, we do not find these assertions meritorious. See State v. Brooks, 505 So.2d 714, 723 (La.), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Nevertheless, defendant has the right to apply for post-conviction *70 relief on the basis of ineffective assistance of counsel predicated on these allegations. See State v. Brooks, 505 So.2d at 724.
Folse also makes several other allegations of deficient performance by his trial counsel, a determination of the merits of which can be made upon the record before us. These allegations are as follows:
(1) Trial counsel failed to file any motions in connection with the charges, particularly a Brady motion to discover information due to the lack of information in the bill of information.
(2) Trial counsel failed to properly prepare and question jurors and to use any peremptory challenges.
(3) Trial counsel failed to call or prepare any witnesses for trial including character witnesses.
(4) Trial counsel failed to object to inadmissible damaging evidence introduced at trial.
(5) Trial counsel failed to develop a winning strategy to present to the jury through witnesses or evidence.
(6) Trial counsel failed to make an effective, reasonable or cohesive opening or closing statement.

ALLEGED FAILURE TO FILE PRETRIAL MOTIONS
The record reflects that, prior to the filing of the instant charges, Folse was originally charged with molestation of a juvenile (a violation of LSA-R.S. 14:81.2).[7]
In connection with the original charge, Folse filed several pretrial motions, i.e., a motion to suppress evidence, a motion to suppress any confession, a motion to suppress evidence of identification, a motion for a preliminary examination, and a motion for bill of particulars and discovery and inspection. In connection with each of these motions, the trial court signed an order that the State show cause on or before December 17, 1991, why the motions should not be granted. The pertinent court minutes of December 17, 1991, reflect that the motions were ordered continued without date by the trial court on motion of Folse's trial counsel and the court set the case for trial to be held on the date it was subsequently held. The record does not reflect any subsequent action regarding any of these motions.
The thrust of Folse's argument is that the case went to trial with defense counsel knowing little about the factual basis of the charges and without the benefit of knowing that Folse's two young sons were present at Folse's house at the time of the alleged offense against Victim Two. Folse asserts that, had the two boys been called to testify for the defense, they could have refuted testimony about the frisbee, the touchings and the LSU shorts.[8] However, this argument is not supported by the record. To the contrary, Folse admitted during his testimony that he became aware of the instant charges a day or two after the incident and that he had no confusion about the charges. At trial, out of the jury's presence, trial counsel stated for the record that the State had informed him that it had no Brady material and that if it had any, it would have furnished such to him. The prosecutor acknowledged that was correct and also stated for the record that he had provided defense counsel with a copy of the statement[9] Folse had made to Detective Vedros. Folse's trial counsel acknowledged that he was aware of the statement and its content. Immediately before Folse took the stand at trial, trial counsel stated for the record that in reviewing trial tactics he and Folse had considered calling one of Folse's sons as a witness. Folse then acknowledged *71 that he had so instructed trial counsel not to call his son to testify.

ALLEGATIONS PERTAINING TO VOIR DIRE
Folse generally asserts that trial counsel failed to properly prepare and question prospective jurors and failed to use any peremptory challenges to exclude any of the members of the all female jury which tried him. He asserts that to allow the trial to proceed with an all female jury without using a single peremptory challenge to exclude any of them, is negligence. After examining the transcript of voir dire, we find that the record does not support the claim that trial counsel failed to properly prepare and question the prospective jurors during voir dire. Furthermore, we take a dim view of Folse's assertion concerning the all female jury. His assertion that trial counsel should have used peremptory challenges to exclude jurors on the basis of gender is of doubtful legality and the failure to do so by trial counsel was certainly not negligence nor deficient representation on his part.

FAILURE TO CALL OR PREPARE WITNESSES
As previously noted above, trial counsel discussed with Folse whether or not to call Folse's son as a witness and Folse informed counsel that he did not wish to call the child as a witness. The record further reflects that, during the State's case-in-chief, out of the jury's presence, trial counsel and Folse stated for the record that they had discussed the merits of calling Natalie Folse, the mother of Victim One, as a witness and had decided not to call her. The election to call or not call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel. State v. Seay, 521 So.2d 1206, 1213 (La.App. 2nd Cir.1988). Furthermore, Folse did not introduce any evidence at the hearing on the motion for new trial to substantiate his claim that trial counsel was ineffective by not calling any witness other than himself. Accordingly, this alleged deficient performance is also not supported by the record.

ALLEGED FAILURE TO OBJECT TO EVIDENCE
In making this allegation of deficient performance by trial counsel, Folse merely makes a general assertion that trial counsel failed to object to inadmissible damaging evidence introduced at trial. He does not disclose any specific instance in which inadmissible evidence was admitted without trial counsel's objection. As previously noted herein, Folse argues the trial court erred by admitting inadmissible evidence at trial, which, for the reasons we previously set forth in footnote one, are not properly before this Court. However, an examination of the record discloses that, in both of these instances of alleged erroneous admission of testimony, trial counsel objected to the admission of the testimony and that the trial court overruled the objections. Consequently, this allegation does not show that trial counsel's representation was constitutionally deficient.

FAILURE OF TRIAL STRATEGY
Folse generally asserts that trial counsel's performance was deficient because he failed to develop a winning strategy to present to the jury through witnesses or evidence. Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. State v. Felde, 422 So.2d 370, 393 (La.1982), cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983). The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Felde, 422 So.2d at 393.

OPENING AND CLOSING ARGUMENT
In this allegation of deficient performance, Folse asserts that trial counsel failed to make an effective, reasonable or cohesive opening or closing statement. While admitting that trial counsel was not required to make an opening statement,[10] Folse characterizes trial counsel's opening statement as a poor attempt to explain the presumption of *72 innocence to the jury. To support his allegation of deficient performance, Folse relies on a single comment which he quotes from the opening statement. The comment is: "I want to talk to you about the fact that he's probably guilty." An examination of the trial counsel's opening statement reveals that the quoted comment was made while counsel was explaining to the jury the presumption of innocence to which Folse was entitled. More specifically, the comment was made in a context in which trial counsel explained that it was the prosecutor's suspicion that Folse had committed the charged offenses and that the prosecutor had filed the charges because he "thinks" Folse is probably guilty. Trial counsel further explained to the jurors that if they were merely suspicious or thought Folse was guilty, that was not sufficient to convict Folse in the absence of proof of guilt beyond a reasonable doubt.
In criticizing trial counsel's closing argument, Folse cites only a portion of the argument in which trial counsel stated to the jury that the defense had no witnesses to disprove what they are saying except Cecil Folse. An examination of the entirety of trial counsel's closing statement does not in any way support a claim of constitutionally deficient representation. The election to call or not call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel. State v. Seay, 521 So.2d at 1213. Further, the inclusion of a comment in closing argument that there are no defense witnesses other than defendant to disprove the prosecution's evidence is certainly appropriate and in no way supportive of a claim of ineffectiveness of counsel.
This assignment lacks merit.

PATENT ERROR
Folse made a general request for a patent error check by means of his assignment number seven. Such a request is unnecessary since this Court routinely examines the record for errors patent, whether or not such a request is made by the defendant. Under LSA-C.Cr.P. art. 920(2), we are limited in our patent error review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. In reviewing the record for patent error, we discovered that the trial court did not wait the required twenty-four hours after denial of Folse's motion for new trial before imposing sentence, nor did Folse expressly waive that waiting period. See LSA-C.Cr.P. art. 873. However, under circumstances as those present herein in which the defendant has not assigned the issue as error or challenged the sentences, the error is harmless in the absence of a showing of prejudice. See State v. Augustine, 555 So.2d 1331, 1334 (La.1990). Herein, Folse does not allege any prejudice, nor do we find any prejudice. Thus, we find this patent error to be harmless.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Folse briefed three additional arguments not formally assigned as error, i.e., (1) that the trial court erred by granting the State's challenge for cause of prospective juror Karl Percle, (2) that the trial court erred by allowing the State to question Victim Two's mother as to whether or not the "frisbee incident" caused her daughter any problems, and (3) that the trial court erred by allowing Detective Warren Vedros to testify as to what Victim One told him. However, in accord with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of LSA-C.Cr.P. arts. 844 and 920, this Court will not consider any arguments such as those referenced above which are neither assigned as error nor related to error patent on the face of the record. See State v. Spears, 350 So.2d 603, 605 n. 1 (La.1977); State v. Overton, 337 So.2d 1201, 1207 (La.1976).
[2] Trial was held on March 9-10, 1992.
[3] To protect the identity of the victims, we have designated them as Victim One and Victim Two.
[4] Both victims testified at trial.
[5] Solely for purposes of accuracy, we note that, notwithstanding defense counsel's assertion to the trial court to the contrary, Title 43 deals with public printing and advertisements and not income tax, which is dealt with in Title 47.
[6] In setting forth these allegations, we have consolidated various allegations made by defendant in his brief in order to eliminate duplications in the allegations and group the allegations into categories of similar subject matter; and, in doing so, we have made every effort to preserve the essence of defendant's allegations.
[7] The molestation of a juvenile charge was subsequently nol-prossed.
[8] Notwithstanding defendant's assertion that the testimony of the boys could have refuted the victims' testimony about defendant having worn the "LSU short" at the time of the offenses and his assertion that further investigation by defense counsel could have revealed that the shorts did not have a tiger emblem on them, defendant clearly admitted during his trial testimony that (at the time he came home and found Victim One sleeping on the sofa) he was wearing the shorts previously referred to by the victims and that he wore them often.
[9] The statement, previously referred to herein, was subsequently introduced by defendant as Defendant's Exhibit D-1.
[10] LSA-C.Cr.P. art 765 provides that a defendant may waive an opening statement.