568 So.2d 231 (1990)
STATE of Louisiana, Plaintiff-Appellee,
v.
Oscar GOINS, Defendant-Appellant.
No. Cr90-85.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Writ Denied January 18, 1991.
*233 Constance Abraham-Handy, Lake Charles, for defendant-appellant.
David Kimball, Beth Conrad, Asst. Dist. Attys., Lake Charles, for plaintiff-appellee.
Before DOUCET, YELVERTON and KING, JJ.
KING, Judge.
This appeal presents for consideration by this Court the issue of whether the trial judge committed reversible errors in the trial of this matter.
Oscar Goins (hereinafter defendant) was charged by grand jury indictment with the crime of distribution of cocaine, a felony in violation of La.R.S. 40:967(A)(1). Defendant pled not guilty and was tried before a jury. The jury found defendant guilty as charged. After a sentencing hearing, the trial court sentenced the defendant to serve a term of seven years at hard labor. The defendant timely appeals urging the following five assignments of error:
(1) The trial court erred in appointing an attorney for the defendant after the defendant expressed a desire to represent himself;
(2) The trial court erred in denying the defendant's request to change his plea from not guilty to not guilty and not guilty by reason of insanity and denying the appointment of a sanity commission;
(3) The trial court erred in finding the evidence presented by the State was sufficient to find the defendant guilty;
(4) The trial court erred in allowing the introduction of a tape recording into evidence; and
(5) The sentence imposed upon the defendant was excessive.
For the reasons hereinafter set forth, we affirm the defendant's conviction and sentence.

FACTS
On the afternoon of October 26, 1987, defendant approached a stranger named Willie Patterson, in Calcasieu Parish, Louisiana, to initiate a drug transaction. Patterson accepted and rode in defendant's car to a home wherein he saw approximately 30 to 40 bags of cocaine. Defendant offered one bag to Patterson for $50.00. Patterson did not have enough cash with him, but promised to return later and make the purchase. Patterson offered defendant a gold ring as "insurance" for his return. Defendant instructed Patterson to meet him outside the American Veterans Hall at 7:00 that evening.
Patterson left defendant and immediately went to the Calcasieu Parish Sheriff's Office where he informed officers of the Narcotics Division of his upcoming rendezvous with defendant. For this information and for agreeing to complete the drug transaction, Patterson received $100.00. The Sheriff's deputies placed a "body bug" on Patterson and drove him to the American Veterans Hall. The defendant arrived in his car shortly thereafter and drove Patterson to the house where defendant had taken him earlier that day. Upon their arrival, defendant was told that all of the cocaine had been moved to another location. Defendant then drove to an apartment complex where, upon receiving Patterson's $50.00, defendant exited his car alone, and returned with a bag of cocaine for Patterson. After handing the bag to Patterson, defendant drove his car to the Greyhound Bus Station where Patterson left defendant's car.
Narcotics detectives observed all of defendant's actions from the time Patterson was met at the American Veterans Hall, to the time defendant dropped Patterson off at the bus station. At one point, an undercover officer even drove next to defendant's vehicle to get a clear look at defendant. Those same officers were present at the Greyhound Bus Station when Patterson exited defendant's car. They immediately arrested Patterson and took him to the police station.
An expert in the field of drug analysis tested the contents of the bag that defendant gave Patterson and found it to be *234 cocaine. The bag contained 0.3 grams of cocaine.
Defendant was charged by grand jury indictment with distributing cocaine in violation of La.R.S. 40:967(A)(1). During the pre-trial phase of this matter, the court appointed an attorney to represent the defendant even though defendant had indicated a desire to represent himself. On the day of trial, October 16, 1989, defendant decided against self-representation and instead decided to utilize the services of the attorney who had been previously appointed by the court to represent him.
Just prior to beginning of trial, defendant attempted to change his original plea of not guilty to not guilty and not guilty by reason of insanity and sought the appointment of a sanity commission. These motions were denied by the trial court.
During trial, the State offered the testimony of Patterson and the eyewitness testimony of several deputies from the Narcotics Division of the Calcasieu Parish Sheriffs office. The State also introduced into evidence and played briefly for the jury the tape recording from the "body bug" placed on Patterson. The defense did not present any witnesses. The jury found the defendant guilty of distribution of cocaine. At a sentencing hearing, the trial judge sentenced the defendant to serve a term of seven years at hard labor. The defendant timely appeals.

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends in his first assignment of error that the trial court erred in denying his request to represent himself and in forcing him to proceed to trial with a court appointed counsel representing him.
The Sixth Amendment of the United States Constitution grants to an accused the right of self-representation. U.S. Const. Amend. VI. Before a defendant can represent himself, he must be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Sepulvado, 549 So.2d 928 (La.App. 3 Cir. 1989).
Just before trial was scheduled to begin, defendant, through his court appointed attorney, made known his desire to represent himself. The trial judge recessed the proceedings and the problems of self-representation were fully explained to the defendant. When the trial resumed, the defense attorney withdrew the defendant's earlier motion to represent himself because the defendant had decided against self-representation. The trial judge then recessed the proceedings again to allow defendant and his attorney time to discuss and review the case before the trial continued.
The error defendant complains of in this assignment of error never occurred. The trial judge did not force defendant into using his court appointed attorney who had been appointed approximately one and one-half years prior to the day of trial but, rather, the record shows that the defendant himself freely and voluntarily decided to use the court appointed counsel after being informed of the disadvantages of self-representation. For this reason, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends in his second assignment of error that the trial court erred in denying his request to change his plea from not guilty to not guilty and not guilty by reason of insanity, and in denying his motion for the appointment of a sanity commission.
La.C.Cr.P. Art. 641 provides that:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
Additionally, La.C.Cr.P. Art. 643 states:
"The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed...."
After voir dire and selection of the jury, but before the commencement of evidence, defendant moved to change his original *235 plea of not guilty to not guilty and not guilty by reason of insanity and to have the court appoint a sanity commission to determine defendant's mental capacity. Defendant did not make his motion to change his plea within ten days of his arraignment. See, La.C.Cr.P. Art. 561. We note that the Comment to this article states that one of the reasons for the requirement that this plea be urged within ten days after arraignment is to "preclude a belated urging of the plea as a dilatory tactic." Thereafter, the trial judge has discretion to allow such a plea "for good cause shown." La.C. Cr.P. Art. 561. The basis of the motion for defendant to withdraw his plea of not guilty and to enter a plea of not guilty and not guilty by reason of insanity and for the appointment of a sanity commission was that defendant had allegedly "been committed about six times in the last six months in Alexandria." No further information or facts were presented in defendant's motions to change his plea and for the appointment of a sanity commission.
This court stated in State v. Saddler, 538 So.2d 1073 (La.App. 3 Cir.1989), writ granted, reversed on other grounds, 549 So.2d 1236 (La.1989), that:
"The fact that the defendant's mental capacity to proceed is raised does not for that reason alone require the judge to order appointment of a sanity commission.... There must exist some reasonable doubt whether the defendant has the mental capacity to stand trial before the court is required to order appointment of a sanity commission." State v. Saddler, 538 So.2d 1073, at page 1075 (La.App. 3 Cir.1989), writ granted, reversed on other grounds, 549 So.2d 1236 (La.1989).
See also, State v. Newman, 515 So.2d 548, 549 (La.App. 1 Cir.1987); State v. Guidry, 449 So.2d 41, 44 (La.App. 1 Cir.1984).
La.C.Cr.P. Art. 643 requires that the court must have some reasonable doubt whether the defendant has the capacity to proceed before the court is required to order appointment of a sanity commission. The defendant bears the burden of showing by a clear preponderance of the evidence that reasonable grounds exist to doubt defendant's mental capacity to proceed. State v. Saddler, supra; State v. Wilkerson, 403 So.2d 652 (La.1981).
Under La.C.Cr.P. Art. 642, the issue of a person's "mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court." However, the defendant must establish reasonable grounds for the trial judge to believe that he is mentally defective or lacks the capacity to understand the proceedings against him or to assist in his defense before the court is required to appoint a sanity commission. State v. Rogers, 419 So.2d 840, 843 (La.1982).
Defendant made only one allegation to support his motion to change his plea and for the appointment of a sanity commission. This vague allegation was made by the defendant during the trial, after selection of a jury, and immediately before presentation of evidence and was not enough to establish reasonable grounds for the trial court to doubt the defendant's mental capacity to proceed. We find that the defendant's motion was belatedly urged as a dilatory tactic.
This court in Saddler further stated that:
"The appointment of a sanity commission to inquire into the mental condition of the accused is addressed to the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Nix, 327 So.2d 301 (La.1975), reh. den., 1976." State v. Saddler, 538 So.2d 1073, at page 1075 (La. App. 3 Cir.1989), writ granted, reversed on other grounds, 549 So.2d 1236 (La. 1989).
See also, State v. Wilkerson, supra, at page 658.
Since defendant did not allege specific facts or information to establish reasonable grounds for the trial judge to doubt the defendant's mental capacity to proceed, the trial judge's denial of defendant's motions during the trial was not an abuse of discretion. Thus, this assignment of error lacks merit.

*236 ASSIGNMENT OF ERROR NUMBER 3
In the third assignment of error defendant contends that the evidence presented by the State was insufficient to convict him of distribution of cocaine.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Johnson, 541 So.2d 818 (La.1989).
The defendant was convicted of violating La.R.S. 40:967(A)(1), which states in pertinent part, "[e]xcept as authorized by this part, it shall be unlawful for any person [to] knowingly or intentionally distribute a controlled dangerous substance classified in Schedule II." Cocaine is a controlled dangerous substance classified in Schedule II. La.R.S. 40:964(A)(4). Distribution of a controlled dangerous substance requires only general criminal intent. State v. Rexrode, 536 So.2d 671 (La.App. 3 Cir. 1988). Therefore, the prosecution need only show that the defendant "must have averted to the prescribed criminal consequences" of distribution. La.R.S. 14:10(2).
The evidence introduced at trial overwhelmingly supports the defendant's conviction. Patterson offered direct evidence that the defendant totally orchestrated the narcotics purchase by initiating the drug transaction, and deciding the time and place where they would later meet to complete the drug transaction. Defendant drove Patterson to two locations for the specific purpose of finding cocaine to sell him. Ultimately, defendant received $50.00 from Patterson and obtained for him a bag of cocaine.
This testimony was corroborated by two Sheriff's deputies who followed defendant and Patterson during the drug transaction. Moreover, both Patterson and one of the deputies positively identified defendant as the man who obtained the cocaine for Patterson.
Defendant's challenge of the sufficiency of the evidence focuses on alleged contradictions between the testimony of two witnesses and by questioning the character of Patterson.
Defendant points out that Patterson stated he had seen 30-40 bags of cocaine in the house where defendant brought him on the afternoon of October 26, 1987. However, one of the deputies remembered that Patterson had told him that there were approximately 100 bags of cocaine in the house. Further, defendant argues that there was a discrepancy in these witnesses' description of the ring that Patterson said he left with defendant as "insurance" that he would return. Defendant also claims that Patterson was unreliable and that Patterson lied about his personal drug use.
There is no evidence in this case as to Patterson's use of drugs. It is the role of the factfinder to weigh the credibility of witnesses and, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See, State ex. rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
The minor details on which the witnesses' differed in their testimony in no way lessens the overwhelming direct evidence of defendant's guilt. Therefore, when viewing the evidence in the light most favorable to the State, the evidence was more than sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant distributed cocaine to Patterson on October 26, 1987. We find this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant's fourth assignment of error is that the trial court erred in allowing the introduction of a tape recording into evidence.
According to La.C.Cr.P. Art. 716:
"A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, *237 including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer."
In State v. Smith, 466 So.2d 1343 (La. App. 3 Cir.1985), this court held that the prosecution need not give notice of statements forming a part of the res gestae.[1]
Defendant claims that the State introduced a cassette tape into evidence which recorded the meeting between defendant and Patterson without notifying defendant of this taped statement in response to the defendant's request for discovery. Further, defendant argues that the tape recording was of such poor quality that it was prejudicial to defendant.
The State acknowledged defendant's request for discovery, but argues that the tape recorded statements of defendant were res gestae and therefore outside the scope of discovery. Additionally, the State points out that because of the poor quality of the tape recording the purpose of its introduction was only to show that the drug transaction was taped and not for the contents of the tape. Furthermore, the tape recording was made available to and reviewed by defendant before it was revealed to the jury.
The tape recording was nearly inaudible and, because the tape recording was only introduced to show that the drug transaction was recorded and not for its content, and because defendant does not even allege any prejudice resulted from the introduction of the tape recording, we find this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 5
In defendant's fifth assignment of error he contends that the trial judge imposed an excessive sentence.
Article I, § 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals, and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ den., 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
The statutory sentencing range for distributing cocaine sets forth a sentence between five and thirty years at hard labor. La.R.S. 40:967(B). Defendant's sentence of seven years at hard labor is nearer the minimum prison term permitted for this offense. Furthermore, before imposing sentence, the trial court considered the defendant's previous criminal record and convictions which included a conviction for issuing worthless checks, a conviction for forgery, and a conviction for possession of marijuana.
*238 We find the record amply supports the sentence given to defendant by the trial judge. Moreover, considering defendant's history of serious criminal activity and the gravity of the instant offense, a seven year sentence is not so disproportionate to the harm done to society as to shock one's sense of justice. Thus, we find this assignment of error also lacks merit.
Since we find no merit to any of the defendant's assignments of error, we affirm the conviction and sentence of the defendant.
AFFIRMED.
NOTES
[1] Res gestae is a term which was contained in former La.R.S. 15:447 and 15:448. With regard to oral statements, what constitutes res gestae is now referred to as statements "... which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." La. C.E. 801(D)(4).