Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,693-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

TERRANCE MALIK DANGERFIELD            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 393,286

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPEALS AND WRIT          Counsel for Appellant
SERVICE
By:  Remy Starns
     Michael Anthony Mitchell
     Corrie R. Gallien


TERRANCE MALIK DANGERFIELD            Pro Se


JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney


REBECCA ARMAND EDWARDS
KODIE K. SMITH
CHRISTOPHER BOWMAN
Assistant District Attorneys

* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Terrance Malik Dangerfield ("Dangerfield") was indicted by grand jury on February 15, 2025, on the following four charges:

Count 1: Manslaughter per La. R.S. 14:31(A)(2)(a);
Count 2: Manslaughter per La. R.S. 14:31(A)(2)(a);
Count 3: Possession of firearm or carrying concealed weapon by a person convicted of certain felonies per La. R.S. 14:95.1; and
Count 4: Illegal Carrying of Weapons While in Possession of a Controlled Dangerous Substance – Second Offense per La. R.S. 14:95(E).

Dangerfield was convicted on all counts after a jury trial held November 6, 2024. At a hearing on January 23, 2025, the trial court found Dangerfield guilty of being a fourth felony habitual offender as to Counts 1 and 2, and a third felony habitual offender as to Counts 3 and 4. The trial court sentenced Dangerfield to a term of life imprisonment each for Count 1 and Count 2; 30 years without benefit of probation, parole, or suspension of sentence for Count 3; and 40 years without benefits for Count 4. All sentences were ordered to run consecutively, with credit for time served.

Dangerfield's trial counsel did not file a motion for reconsideration or a motion for appeal on his behalf. Dangerfield filed a pro se motion for appeal, which the trial court initially denied. After writs were taken, this Court remanded with instructions to treat the appeal as a timely filed post-conviction relief application requesting an out-of-time appeal. The trial court granted Dangerfield's post-conviction relief and motion for appeal.

For the reasons set forth below, we AFFIRM the sentences as AMENDED.

**FACTS AND PROCEDURAL BACKGROUND**

On January 10, 2023, Shreveport Police Department ("SPD") Officer Aaron Moran ("Officer Moran") was on patrol when he initiated a traffic

stop of a Hyundai vehicle, later determined to be driven by Dangerfield. Dangerfield failed to pull over and a pursuit ensued, in which Dangerfield drove in excess of 80 miles per hour. Dangerfield exited Highway 3132, accelerated and ran the traffic light at the Walker Road intersection, and collided into the driver's side of the vehicle driven by Faith Alexander. Both Faith Alexander and her four-year-old daughter, who was in a car seat in the rear seat, were transported from the scene to the hospital. Faith Alexander underwent emergency surgery, but she soon succumbed to her injuries. Her daughter passed away shortly after arriving at the hospital.

Dangerfield fled the scene into a wooded area, then to a nearby residence where he called from the resident's mobile phone for someone to pick him up. The resident's phone showed that Dangerfield called his mother, which was the same number provided by Dangerfield in a later report. The resident was also able to identify Dangerfield in a lineup, in which he pointed out distinctive neck tattoos. Dangerfield was ultimately apprehended on January 11, 2023. Dangerfield's residence and the Hyundai were also searched, revealing two handguns and large quantities of marijuana, which were the basis of Counts 3 and 4. DNA evidence was obtained affirmatively linking him to the vehicle and handgun. Dangerfield's identification as the perpetrator is not disputed.

Dangerfield was convicted as charged of two counts of manslaughter, one count of possession of a firearm by a convicted felon, and one count of illegal carrying of weapons while in possession of a CDS – second offense. The State filed a habitual offender bill of information on November 7, 2024, asserting that Dangerfield had the following prior felony convictions:

1. Obstruction of Justice, to which he pled guilty on February 20, 2018, in the First Judicial District Court of Caddo, Louisiana in Docket No 345549. He was sentenced to 3 Years Hard Labor.

2. Attempted Aggravated Criminal Damage to Property to which he pled guilty on November 19, 2019, in the Twenty-Sixth Judicial District Court of Bossier, Louisiana in Docket No 219038. He was sentenced to 2 Years Hard Labor Suspended, 2 years Supervised Probation.

3. Illegal Carrying of Weapons While in Possession of a Controlled Dangerous Substance to which he pled guilty on June 15, 2021, in the First Judicial District Court of Caddo, Louisiana in Docket No 367771. The defendant was sentenced to 5 Years Hard Labor.

The State used Counts 1 and 2 to establish Dangerfield's fourth felony conviction and Counts 3 and 4 to establish his third felony conviction. Dangerfield filed a motion to quash the habitual offender bill on December 27, 2024, which was denied.

The trial court sentenced Dangerfield to life imprisonment at hard labor for Count 1; life imprisonment at hard labor for Count 2; 30 years without benefits for Count 3; and 40 years without benefits for Count 4. All sentences were ordered to run consecutively, with credit for time served.

No motion for reconsideration was filed. Dangerfield's trial counsel did not file a motion for appeal on his behalf, but Dangerfield filed a pro se motion for appeal, which the trial court initially denied. The State filed a response to Dangerfield's appeal motion, indicating it had no objection to Dangerfield filing an out-of-time appeal. On May 14, 2025, this Court granted Dangerfield's writ application on the denial of his appeal and remanded the matter to the trial court with instructions to treat the out-of-time appeal as a timely filed post-conviction relief application requesting an out-of-time appeal. The trial court granted Dangerfield's post-conviction relief and motion for appeal.

## DISCUSSION

### *Denial of Motion for Sanity Commission*

Defense counsel filed a motion to appoint a sanity commission on October 30, 2024, approximately one week before trial. The State was not notified of the filing. No documents were included with the pleading. According to the State, defense counsel was not present in court when the matter was called, but he appeared later that morning to present the motion and submit Dangerfield's medical records under seal. Defense counsel explained that he did not file the records with the motion due to HIPAA, but he felt comfortable filing them in court with his client present. When presenting the motion, defense counsel informed the trial court that Dangerfield had difficulty assisting in his own defense, stating in particular:

> I was able to show that Mr. Dangerfield has been in and out -- and the only reason we don't have more documentation of his medical condition is that his mother couldn't get more because he's over 18 now, but from 13 to 18 he went to the mental institutions or whatever the proper term is on at least four different occasions, and I've been able to give that to the Court.
>
> ***
> I talked to the client. I talked to the mamma. I talked to everybody to make sure because this thing is as inconvenient for me and my client as it is for the Court because if they find that he's not competent they are just going to stick him somewhere until they get him competent. So this is not something that I take lightly or anybody should take lightly. It has to be something given the right amount of consideration, but I can't get into the specifics of our conversations, but after -- when you're getting ready for trial, the conversations are more frequent and they are longer, and I became concerned about his ability to understand the magnitude or the gravity of the case.

Dangerfield's motion included the following assertion of mental incompetency:

> Mr. Dangerfield has been charged with Two Counts of Manslaughter. The defense alleges that based on Mr. Dangerfield's medical history [*sic*] suggests that he suffers from

mental disease, defect or abnormality which precludes him from having the capacity to proceed to trial, to understand the nature of the proceeding against him or to assist his attorney in the defense.

The trial court denied the motion, referring to *State v. Lott*, 574 So. 2d 417 (La. App. 2 Cir. 1991), *writ denied*, 580 So. 2d 666 (La. 1991), stating that "the appointment of a sanity commission is not a perfunctory matter or administerial [*sic*] duty of the trial court, and it's not guaranteed in every case." It further stated:

> Based on everything that I've observed - - and, you know, the reports you filed into the record are from 2013 and 2014 where he was admitted because he was homicidal and suicidal because in the eighth grade his girlfriend broke up with him and slept with another guy, that has no bearing on this case. I've seen, based on his behavior, nothing to indicate to me that he cannot comprehend the case or assist in his defense, and the Motion to Appoint Sanity Commission is hereby denied.

In *State v. Strain*, 42,809 (La. App. 2 Cir 12/05/07), 972 So. 2d 1184, 1187, this Court held that:

> A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense may not be subject to trial. *State v. Nomey*, 613 So. 2d 157 (La. 1993). Due process also demands adequate anticipatory, protective procedures to minimize the risk that an incompetent person will be convicted. *Medina v. California*, 505 U.S. 437, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Louisiana's statutory scheme for detecting mental incapacity "jealously guards a defendant's right to a fair trial." *Nomey*, *supra*. Thus, when there is a *bona fide* question raised regarding a defendant's capacity, the failure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. *State ex rel. Seals v. State*, 00-2738 (La. 10/25/02), 831 So. 2d 828. Once the determination that a *bona fide* question has been raised regarding a defendant's capacity, the failure to resolve the issue of capacity may result in nullification of the conviction and sentence or a *nunc pro tunc* hearing to determine competency retrospectively. *Id*. Mental incapacity to proceed exists when, as the result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La. C. Cr. P. art. 641. The defendant's

5

mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except institution of prosecution, until the defendant is found to have the mental capacity to proceed. La. C. Cr. P. art. 642. The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. La. C. Cr. P. art. 643.

This Court further discussed the determination of a defendant's mental capacity in *State v. Gilbert*, 55,257 (La. App. 2 Cir. 09/27/23), 372 So. 3d 403, 412, *writ denied*, 23-01422 (La. 4/3/24), 382 So. 3d 105, as follows:

> "Reasonable ground" refers "to information which, objectively considered, should reasonably raise a doubt about the defendant's competency and alert the court to the possibility that the defendant can neither understand the proceedings, appreciate the proceedings' significance, nor rationally aid his attorney in his defense." *State v. Anderson*, 06-2987 (La. 9/9/08), 996 So. 2d 973, 992, *cert. denied*, 556 U.S. 1165, 129 S. Ct. 1906, 173 L. Ed. 2d 1057 (2009). The trial court's decision regarding a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect but must be made with specific reference to the nature of the charge, the complexity of the case, and the gravity of the decision with which the defendant is faced. A judicial examination of a defendant's competency focuses primarily on whether he understands the nature of the charge and can appreciate its seriousness. *State v. Odenbaugh*, 10-0268 (La. 12/6/11), 82 So. 3d 215, *cert. denied*, 568 U.S. 829, 133 S. Ct. 410, 184 L. Ed. 2d 51 (2012).

The Court goes on to state, "It is not enough that the defense has filed a motion urging the defense, but there must be sufficient evidence to raise a reasonable doubt as to such capacity." *Id*. at 413.

In its decision in *State v. Bridgewater*, 00-1529, (La. 1/15/02), 823 So. 2d 877, 892, *cert. denied*, 537 U.S. 1227, 123 S. Ct. 1266, 154 L. Ed. 2d 1089 (2003), the Louisiana Supreme Court set forth the law as follows:

> Simply because a defendant's capacity to proceed is called into question by formal motion does not mandate a mental examination be ordered and a sanity commission be appointed.

6

La. C. Cr. P. arts. 643, 644; *State v. Goins*, 568 So. 2d 231, 234 (La. App. 3 Cir. 1990), *writ denied*, 573 So. 2d 1117, 1118 (La. 1991). Appointing a sanity commission is neither a perfunctory matter nor a ministerial duty of the trial court; it is not guaranteed to every accused in every case. *State v. Lott*, 574 So. 2d 417, 424 (La. App. 2 Cir.), *writ denied*, 580 So. 2d 666 (La. 1991). Given the presumption of sanity, before the court is required to appoint a sanity commission, the defendant must establish by a preponderance of the evidence that reasonable grounds exist to doubt his mental capacity to proceed. *State v. Bickham*, 404 So. 2d 929, 934 (La. 1981); *Goins*, *supra*. A reviewing court owes the trial court's determination on these matters great weight, and the trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion. *Bickham*, *supra*.

The motion to appoint a sanity commission refers to Dangerfield's medical records and includes the basic assertion that he suffers from a mental condition which precludes him from having the capacity to proceed at trial. Defense counsel stated during the hearing on the motion that he was concerned about Dangerfield's ability to understand the magnitude of the case. However, defense counsel did not elaborate upon the reasoning for his concern.

It is apparent that the trial court reviewed the medical records, but they were not included in the appellate record for review. Nonetheless, we would point out several instances that would bolster the trial court's determination that Dangerfield was competent to stand trial. There was nothing in the record other than defense counsel's assertions that would indicate Dangerfield did not understand the proceedings. As shown in previous court transcripts, Dangerfield was actually actively engaged in the proceedings such that it was evident he was well versed in legal processes. Following trial, Dangerfield filed pro se pleadings. Notably, all of the instances took place after Dangerfield had been admitted into the institutions as supposedly was shown in the medical records. In addition, the

7

circumstances of the traffic stop itself and resulting fleeing from authorities indicated that Dangerfield was aware that there would be consequences resulting from having firearms and drugs in his vehicle.

The trial court observed Dangerfield's behavior in court and noted there was nothing to indicate that he lacked capacity to understand the proceedings or assist in his defense. It also found that the medical records from years before concerning a teenage breakup had no bearing on Dangerfield's mental competency to proceed to trial. Especially given the presumption of sanity, Dangerfield failed to establish by a preponderance of the evidence that reasonable grounds existed to doubt his mental capacity to proceed to trial. The decision to grant or deny a motion to appoint a sanity commission is within the sound discretion of the trial court. *Odenbaugh*, *supra*; *Gilbert*, *supra*. There was no abuse of discretion by the trial court.

**Constitutionally Excessive Sentence**

Dangerfield attempts to make certain arguments regarding mitigating factors for his sentence such as his youth, as well as the circumstances of his prior convictions used in the State's habitual offender bill. However, as the State points out, no motion to reconsider sentence was filed. The failure to file a motion to reconsider sentence relegates sentencing review to constitutional excessiveness. La. C. Cr. P. art. 881.1(E); *State v. Parker*, 54,947 (La. App. 2 Cir. 3/1/23), 358 So. 3d 220, *writ denied*, 23-00417 (La. 10/3/23), 370 So. 3d 1073; *State v. Nabors*, 53,357 (La. App. 2 Cir. 4/22/20), 295 So. 3d 974, *writ denied*, 20-00709 (La. 10/6/20), 302 So. 3d 527. Therefore, arguments concerning mitigating factors allegedly not considered are not properly before this Court, and the only issue for review is that of the constitutional excessiveness of Dangerfield's sentence.

8

A sentence that is grossly out of proportion to the serious of the offense or nothing more than a purposeless and needless infliction of pain and suffering is constitutionally excessive in violation of La. Const. art. I, §20. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Jackson*, 52,606 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1217, *writs denied* 19-00699 (La. 10/15/19), 280 So. 3d 560 and 19-00797 (La. 1/28/20), 291 So. 3d 1056. A grossly disproportionate sentence is one, which viewed in light of the harm done to society, shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *Jackson*, *supra*. The reviewing court considers only whether the trial court abused its broad sentencing discretion, not whether some other sentence may have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996).

Dangerfield urges that his age, lack of maturity, and the context of the prior convictions establish that consecutive life sentences are grossly disproportionate, and that a constitutionally proportionate sentence imposed on someone his age must allow for growth, development, and rehabilitation. He argues that this Court should weigh these factors together and find that his sentence is unconstitutionally excessive and nothing more than the purposeless imposition of pain and suffering.

The trial court noted that the evidence proved Dangerfield fled from police, failed to stop at an intersection, ran a red light, and slammed into the side of the vehicle, killing Faith Alexander and her four-year-old daughter. He then fled the scene, and a search of his vehicle uncovered two Glock handguns and 1.8 pounds of marijuana. It reasoned that someone speeding who ran a red light while fleeing police would surely contemplate that his

actions could cause or threaten serious harm. The trial court further pointed out that Dangerfield was on parole at the time of these offenses.

The trial court explained the sentencing ranges for the convicted offenses. For the manslaughter of Faith Alexander, the range was imprisonment at hard labor for not more than 40 years. For the manslaughter of her four-year-old daughter (a person under the age of ten years), the range was imprisonment at hard labor and without benefit of probation, parole, or suspension of sentence for not less than 10 nor more than 40 years. For Count 3, the offense carried a sentence of not less than five nor more than 20 years at hard labor without benefit of parole, probation, or suspension of sentence, and be fined not less than $1,000 nor more than $5,000. Count 4 carried a sentence of imprisonment at hard labor for not less than 20 nor more than 30 years without benefit of parole, probation, or suspension of sentence. However, as a fourth felony offender for Counts 1 and 2, the sentences are 40 years to life. As a third felony offender for Count 3, the sentence is 10 to 40 years without benefit of probation, parole, or suspension of sentence. As a third felony offender for Count 4, the sentence is 20 to 60 years without the benefit of probation, parole, or suspension of sentence.

Dangerfield is a repeat offender as shown by his adjudication as a third and fourth felony offender. He has had ample opportunity for rehabilitation, but he has chosen not to do so. Even while on parole, he possessed both firearms and drugs and fled police to avoid being caught with them. He dangerously drove at excessive speeds and ran a red light, which resulted in the death of a young mother and her young child. He continued

10

to avoid accountability by fleeing the scene on foot instead of showing any concern for the welfare of the victims.

The consecutive life sentences for the manslaughter convictions of Faith Alexander and her daughter were appropriate in light of the circumstances. The sentences imposed for the two firearm offenses were midrange. For a habitual offender who showed complete disregard for the lives of others in order to continue his pattern of committing crimes, the consecutive sentences are not grossly disproportionate to the severity of the offenses or shocking to the sense of justice, and they are not purposeless and needless inflictions of pain and suffering. The sentences imposed are not constitutionally excessive, and the trial court did not abuse its sentencing discretion.

### *Error Patent Review*

Although the trial court correctly referred to the sentencing provisions for each offense during its explanation of the sentencing ranges, when the court pronounced Dangerfield's sentence, it failed to specify that the sentences were at hard labor as provided in each statute. The minutes of court reflect that the sentences are to be served at hard labor. The trial court's oversight in failing to state whether Dangerfield's sentences were to be served at hard labor renders the sentences illegally lenient. *State v. Shannon*, 55,697 (La. App. 2 Cir. 7/17/24), 399 So. 3d 52, *writ denied*, 24-00987 (La. 11/20/24), 396 So. 3d 70; *State v. Martinez*, 52,882 (La. App. 2 Cir. 8/14/19), 278 So. 3d 467; *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20), 292 So. 3d 61. However, because the statutes for all Dangerfield's convicted offenses require the sentences to be served at hard labor, the error is self-correcting.

11

*Id.* Consequently, all of Dangerfield's sentences shall be served at hard labor.

Further, La. C. Cr. P. art. 882(A) provides that an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. As such, any commitment order should be corrected to reflect that Dangerfield's sentences are at hard labor.

## CONCLUSION

For the reasons stated hereinabove, Dangerfield's sentences are hereby AFFIRMED as AMENDED to reflect that each are to be served at hard labor.